## Pavia, Appellant, *v.* State Mutual Life Assurance Company of Worcester, Massachusetts.

274

Argued April 19, 1955. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE, and ERVIN, JJ.

*C. Francis Fisher*, with him *Daniel B. Winters, Newman & Stein* and *Brenlove & Fisher*, for appellant.

*Gilbert J. Helwig*, with him *Reed, Smith, Shaw & McClay*, for appellee.

OPINION BY WOODSIDE, J., September 28, 1955:

This is an appeal from the refusal of the court below to grant the plaintiff's motions for judgment n.o.v. and a new trial after a verdict in her favor in the amount of $846.50 in an action in assumpsit brought against the defendant insurance company on a life insurance policy in which plaintiff was named beneficiary.

The beneficiary sued to recover $15,000, the face amount of the policy issued on her late husband's life, but received a verdict for only the amount of the premiums paid to the insurance company, and interest thereon. As the insurance company admitted liability for the amount of the verdict, the judgment entered by the court below was in effect a judgment for the defendant.

The appeal was taken originally to the Supreme Court, but remitted to this Court.

The fundamental question involved in the case is whether the deceased, to whom the policy was issued, made statements concerning his health in the original application for the policy and the application for reinstatement after it had lapsed, by virtue of which the company would not be liable on the policy.

Because dates are important the facts are stated chronologically as follows: On October 13, 1947 Ralph Pavia consulted Dr. John M. Conway concerning an infection in his nose and throat and for an enlarged gland which had caused a lump on the side of his neck about the size of a small egg. On November 6, 1947 Dr. Conway operated on Pavia in the Eye and Ear Hospital. He removed tonsil fragments and adenoid tissues, making access through the patient's mouth. At the same time he made an external incision at the side of the patient's neck and removed a section of the enlarged cervical gland for the purpose of a biopsy. The biopsy showed that Pavia had lymphosarcoma, a condition which a layman would refer to as cancer.

Dr. Conway did not tell Pavia the nature of his illness, but sent him to Dr. George W. Grier for a series of x-ray treatments. These treatments started November 13. During the treatments the enlarged gland subsided. Another gland on the other side of his neck then became enlarged, but also subsided under x-ray treatment. During these treatments Pavia continued to consult Dr. Conway and at one time when he complained that the x-ray treatments "upset him," he was told by the doctor that if he did not continue the treatments his condition might turn into cancer.

During the course of these x-ray treatments by Dr. Grier, Pavia, at the insistence of his sister, went to Dr. John S. Saling for a physical examination. Dr.

Saling saw him 4 or 5 times, the first time being shortly before January 20, 1948.

On that date Dr. Saling sent Pavia to Dr. John F. Suess for additional tests. Dr. Suess removed blood from Pavia's finger and arm for the purpose of making these tests.

On January 31, 1948 Dr. Suess, in order to make further tests, extracted bone marrow from Pavia by means of a sternal puncture. Doctors Saling and Suess had learned of the diagnosis of lymphosarcoma made through the biopsy, but did not tell Pavia.

On February 2, 1948 Pavia signed an application of defendant company for $15,000 of life insurance. In the application the following questions and answers appeared among others above his signature:

"2. Are you in good health so far as you know and believe? Yes. 9. When and for what reason did you last consult a physician or practitioner? T. & A. 6 weeks ago. 10. What diseases, ailments or injuries have you had within the past five years? As above. 11. Have you ever had any of the following diseases or complaints? . . . (f) Rheumatic fever, diabetes, cancer or any tumor goiter, hyperthyroidism or enlarged glands? No. 17. Have you ever consulted or sought advice or treatment of a physician or practitioner for any reason not already mentioned? No." (T. & A. is an abbreviation for tonsil and adenoids frequently used by the medical profession)

There is evidence that the company relied upon these answers in making their decision to issue the life insurance policy upon which suit was brought.

The answers were in the handwriting of the examining physician who had been employed by the insurance company. This fact is immaterial. *Prevete v. Metropolitan Life Insurance Company,* 343 Pa. 365, 369, 22 A. 2d 691 (1941).

At the time Pavia was a well-developed, healthy-appearing 25 year old man. He had graduated from high school, attended two colleges, been in military service and was a construction foreman.

On February 14, 1948 Pavia completed the series of x-ray treatments.

The policy of insurance having lapsed for nonpayment of a premium due in July, 1948, Pavia signed an application for reinstatement on August 25, 1948 in which he declared inter alia: ". . . For the purpose of inducing the Company to reinstate said policy, I do hereby declare that I am now in sound health and that during the past 12 months I have had no disease, injury, or impairment of health, whatsoever, neither have I consulted or been treated by any physician, surgeon or practitioner . . . I further agree that truth of the foregoing statements shall be the basis of reinstatement of said policy . . ."

On June 18, 1949 Pavia married the plaintiff, and had her named beneficiary in the aforesaid policy.

On November 28, 1949 he died from lymphosarcoma.

The beneficiary submitted proof of his death to the insurance company. It refused payment of the face amount of the policy, but offered to return the premiums which had been paid and the interest thereon. The plaintiff then sued and the case was tried before a jury with the results mentioned above.

In her brief the plaintiff does not seriously press her motion for judgment n.o.v., but does urge upon us that she is entitled to a new trial because of errors in the trial court's charge, particularly its action on the points which were submitted.

As stated by the court below, "The theory upon which the trial judge submitted the case to the jury was such that the defendant carried the burden of proving: (1) that the insured made false statements upon

his application for the policy and/or upon the application for reinstatement of that policy; (2) that at that time he knew the statements to be false; (3) that he intended by these false statements to. deceive the defendant; (4) that the defendant relied upon those false statements in issuing and/or reissuing the policy."

There is no doubt that the evidence supported the verdict. The answers given to the above questions were not only false, but were so patently false and were made at such a time and under such circumstances that the jury could have quite properly concluded that they were known by the applicant to be false and that he intended them to deceive the insurance company. At the very time he made the application he was in the midst of receiving x-ray treatments for enlarged glands which he denied "ever" having. Within a very short time (probably a week or two) he had consulted or taken treatment from three and probably four different physicians, not for tonsils and adenoids, but for enlarged glands, and a general physical condition which he must have believed serious enough to warrant extensive medical examination and treatment. Information concerning these visits to physicians was withheld from the insurance company by him.

It is not necessary for a trial judge to specifically affirm a point for charge if the law contained therein is substantially covered in the charge. *Lutz v. Allegheny County*, 327 Pa. 587, 591, 195 A. 1 (1937). The trial judge is not bound to adopt the language of the points submitted by counsel. He may select his own form of expression and if it states the law with substantial accuracy, nothing further is necessary. *Huth et al. v. Allegheny County*, 339 Pa. 228, 231, 13 A. 2d 18 (1940).

Furthermore, it is proper to refuse a point where it fails to include essential explanatory words, *Suravitz*

*v. Prudential Insurance Company,* 261 Pa. 390, 405, 104 A. 754 (1918), or where, although technically correct, it has no application to the facts of the particular case, *Bills v. Zitterbart,* 363 Pa. 207, 212, 69 A. 2d 78 (1949), or where it assumes the existence of evidence not in the record. *Higgins v. Jones,* 337 Pa. 401, 404, 11 A. 2d 158 (1940).

Failure to report in an application for life insurance minor illnesses such as headaches, grippe, acute colds, indigestion, rawness in the throat and dizziness, and failure to report visits to physicians for such illnesses do not *alone* constitute fraud. *Burton v. Pacific Mutual Life Insurance Company,* 368 Pa. 613, 615, 84 A. 2d 310 (1951). The plaintiff's points 3 and 4 which cover this rule of law were refused by the learned trial judge. This was not error.

The evidence in the instant case did not relate to such minor illnesses as referred to above, but to a condition which was deadly serious. Furthermore, the trial judge made it clear in his charge that not only did the jury have to find the applicant was suffering from a "serious" illness, but also that he knew that he was suffering from a serious condition, although not necessarily that he knew he was suffering from cancer. At least three times in one paragraph of the charge the court suggested to the jury that it had to determine whether the applicant *knew* he was suffering from some "serious" condition.

In the light of the evidence, and what was said in the charge, the affirmance of defendant's second point, which standing alone does not take into consideration the rule concerning minor illnesses, was not error.[1]

---

[1] The point, which is in almost the identical language of *Evans v. Penn Mutual Life Insurance Company of Philadelphia,* 322 Pa. 547, 553, 186 A. 133 (1936), is as follows: "If you find that any one of the representations in the application concerning the state

In the plaintiff's fifth point she sought to have the jury instructed that it could find the defendant was estopped from relying upon the false answers in the original application because of its failure to make further investigation of his physical condition after notice of the operation for tonsils and adenoids.

The principle of law involved in that point has no application to the facts of this case. The applicant made no reference to his enlarged glands or any treatment that he was taking for them. His only reference was to his tonsils and adenoids. Had he referred to the biopsy, or even to the enlarged glands, there may have been some duty imposed upon the insurance company to inquire further concerning the diagnosis, but insurance companies need not examine the hospital and physicians' records of every tonsil operation listed by an applicant for insurance in order to determine whether it might lead them to the discovery of some other more serious condition which may have been treated at the same time.

The plaintiff's other points, which he argues were erroneously refused, relate to the application for reinstatement. In them he sought to have the jury charged that defendant had either waived, or was estopped from asserting, the falsity of the statements contained in the application for reinstatement of the policy.

The law relating to the original application for the insurance and that relating to the application for the reinstatement are not the same.

of health and medical history of the applicant and his consultation with and treatment by physicians was untrue and known to Ralph Pavia to be untrue, the defendant Company is obliged only to pay to the plaintiff the amount paid by Ralph Pavia as premiums during his lifetime, and your verdict should be for the plaintiff in the sum of $946.50."

The contract of insurance involved in this case contains the usual provision that in the absence of fraud the declarations made by the applicant are to be considered as representations and not as warranties. In order to avoid payment on such a policy by reason of false statements contained in the application the insurer must allege and prove not only the falsity of the statements, but in addition, fraud on the part of the applicant: *Burton v. Pacific Mutual Life Insurance Company,* supra; *Travellers Insurance Company v. Heppenstall Company,* 360 Pa. 433, 436, 61 A. 2d 809 (1948) ; *Stein v. New York Life Insurance Company,* 319 Pa. 225, 227, 179 A. 589 (1935) ; *Livingood v. New York Life Insurance Company,* 287 Pa. 128, 131, 134 A. 474 (1926). Where in issue, the determination of the good faith of the applicant at the time of making the representations is for the jury. *Evans v. Penn Mutual Life Insurance Company of Philadelphia,* 322 Pa. 547, 555, 186 A. 133 (1936) and cases there cited.

With respect to the application for reinstatement, there is a different rule of law. That application did not provide that the declarations contained therein were representations and not warranties. To the contrary, the truth of the statements contained therein was made a condition precedent to the reinstatement of the policy. When the parties so intend, the courts will enforce their contract accordingly, and payment upon the policy may be avoided by proof of falsity without proof of fraud. *McInerney v. Metropolitan Life Insurance Company,* 152 Pa. Superior Ct. 636, 639, 33 A. 2d 259 (1943) ; *Mullen v. John Hancock Mutual Life Insurance Company,* 150 Pa. Superior Ct. 323, 28 A. 2d 456 (1942).

Because of the peculiar circumstances of this case the trial judge faced a problem in charging on the law

which he resolved in a manner not detrimental to the plaintiff.

Judge ADAMS explains the reason for this in his opinion as follows:

". . . the trial judge did not charge the jury separately as to the original application for insurance and the application for reinstatement. He charged that in order for the defendant to be entitled to the verdict it must prove that Ralph Pavia was guilty of fraud either at the time he originally applied for the policy or at the time he applied for reinstatement of the policy. The reason that the court charged in this manner was that the statements made in the application for reinstatement were patently false. To the extent that Ralph Pavia had disclosed his medical history in his original application, the defendant had knowledge of the falsity, and it would have been unfair and contrary to law to permit the jury to find for the defendant because of Ralph Pavia's failure to report that part of his medical history a second time."

Thus the defendant was required to prove fraud with respect to any false statement appearing in the application for reinstatement. This is a situation about which the plaintiff cannot justly complain for ordinarily the defendant would have had to prove only the falsity of the answers in the application for reinstatement and not that the answers were fraudulent. Here the trial judge instructed the jury that the defendant had to show fraud in the application for reinstatement as well as in the original application.

It is the contention of the plaintiff that the defendant having accepted the premiums after the reinstatement without making any effort to cancel the policy before the insured's death, is thereby estopped from setting up a defense at this time to the reinstatement

of the policy. He cites as authority: *White v. Metropolitan Life Insurance Company*, 22 Pa. Superior Ct. 501 (1903); *Gross v. Home Life Insurance Company of America*, 112 Pa. Superior Ct. 96, 170 A. 432 (1934); *McGine v. Industrial Health, Accident and Life Insurance Company*, 124 Pa. Superior Ct. 602, 189 A. 889 (1937); *Francois v. Automobile Insurance Company of Hartford, Connecticut*, 349 Pa. 360, 37 A. 2d 525 (1944); and *Headley's Express & Storage Company, Inc. v. Pennsylvania Indemnity Corporation*, 319 Pa. 240, 178 A. 816 (1935).

These cases hold that where the insurance company sets forth in the application for reinstatement that it requires the presentation of evidence satisfactory to the company of the sound health of the insured to reinstate a policy which has lapsed, it cannot accept the premium and then by failing to ask for the presentation of such evidence avoid liability. The insurance company, these cases hold, has a reasonable time to ask for evidence of sound health and if it does not do so within such time, meanwhile accepting premiums, it will be deemed to have accepted the application for reinstatement on the basis of the information concerning the applicant already in its hands. What is a reasonable time is a jury question. In all these cases, as was said concerning the *Headley* case in its opinion, supra, on page 247, "The record is barren of any evidence tending to show deceit or misrepresentation on the plaintiff's part."

Thus it is easily seen that these cases have no application to the instant one. We do not have a case where the issue is whether the insurance company had enough time to ask for evidence of good health in order to determine whether a policy should be reinstated. We have a case where the company did ask for evidence, and the issue is whether it was misled by false answers

284

which, as the case was submitted, were knowingly and fraudulently made.

A careful reading of the entire charge of the learned trial judge leads us to the conclusion that the issues were fairly presented to the jury and that any deficiencies or inaccuracies which may be found therein were more detrimental to the defendant than to the plaintiff.

Judgment affirmed.