Vardzel, Appellant, *v.* Dravo Corporation, Appellant.

Argued October 4, 1960. Before JONES, C. J., MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*P. J. McArdle*, with him *Frank J. Kernan*, for plaintiff.

*Hamilton A. Robinson*, with him *Dickie, McCamey, Chilcote & Robinson* for defendant.

OPINION BY MR. JUSTICE BOK, December 1, 1960:

This is the case of a man falling into a ditch and suffering rather severe injuries. The jury gave him $55,000, and the court below refused defendant's motion for judgment n.o.v. but ordered a new trial unless plaintiff should remit $35,000 of the verdict. Both sides appealed.

The questions are whether the Workmen's Compensation Act applies; whether the defendant was negligent and the plaintiff contributorily negligent; and whether the verdict was excessive.

The plaintiff worked for defendant as a light cleaner. The defendant's property, on Neville Island, Allegheny County, was traversed by Grand Avenue, a public street, the plant lying south of it and a parking lot, marine ways, and other facilities of the defendant on the north in such a pattern that the parking lot was bounded on three sides by defendant's property and on the fourth by the street. The accident happened in the parking lot.

Plaintiff worked from 4:30 p. m. to 12:24 a. m. on June 30, 1955, having parked his car in the lot. This lot measured 210 by 420 feet, with a hard slag top, and the parking rows, with passageway between, ran north and south, as did a series of drainage ditches. These ditches began near the north side of the lot without depth and developed to the south. They were 5 to 6 feet wide and had 8-foot lengths of log bordering each side of each ditch: where there was depth in the ditches stringers had been placed across some of them and nailed to the logs, some of which were themselves anchored by spikes driven a foot into the slag on either side. The lot itself was fenced in but could be entered by openings in its eastern and western sides.

Plaintiff parked his car five or six rows in from the western entrance. When he returned after his shift there was enough light for him to see his way into the parking lot and along a passageway to the row in which his car was. From there to his car it got darker and darker as he proceeded, until it was "real dark", so much so that although he was watching where he was going he couldn't see one of the logs which had been displaced and was lying alongside his car. He.

tripped over it and slid into the ditch, where he sprained his ankle, bruised his shoulder, and acquired such back injuries that a laminectomy had to be done eventually in the hospital. He said that where he fell there were no stringers, and the pictures in evidence taken by him show areas of ditch without stringers and with logs apparently lying loose along the sides of the ditches.

There were nine or ten lights placed around the lot, and plaintiff was not sure how many were burning when he fell. A witness said that at the time of the accident there was no light standard within the confines of the lot. There was only this one lot and on street parking was not allowed. Plaintiff had been using it for about four years, as there was no convenient form of transportation except by automobile.

This sums up the evidence most favorable to the verdict.

It is clear that the case does not fall within the Workmen's Compensation Act: *Young v. Hamilton Watch Co.*, 158 Pa. Superior Ct. 448 (1946), 45 A. 2d 261; *Eberle v. Union Dental Co.*, 390 Pa. 112 (1957), 134 A. 2d 559. In *Young* the defendant's plant was separated by a public street from the defendant's parking lot where plaintiff was injured: the case is on all fours. In *Eberle* plaintiff slipped on a public sidewalk only 15 feet from the entrance of defendant's plant. The claimant was denied the benefits of the Act in both cases, and in *Young* the Superior Court said: "In the present case it is obvious that the parking lot was not a part of the operating business; it was distinct therefrom and separated from defendant's plant by a public thoroughfare. . . . The word 'premises' cannot be enlarged in its meaning and application so as to include land or property outside of that used in connection with the actual premises where the

employer carries on the business in which the employee is engaged. . . . The use of this facility was optional with each employee."

We think that negligence and contributory negligence were for the jury. This is not the case of a foreign substance or a sudden defect of which defendant must have actual or constructive notice. It is rather the case of the adequacy of the defendant's security provisions. It was admitted that there were no guards or attendants on the lot, and hence the failure to provide adequate light and to keep the logs from wandering either created or allowed a condition in which it was foreseeable that mischance could occur.

The cases cited by defendant on constructive notice are inapposite. The appropriate rule, for the jury to apply, is whether the landowner used ordinary and prudent care: *Morris v. A. & P. Tea Co.*, 384 Pa. 464 (1956), 121 A. 2d 135.

In *Oberheim v. Pennsylvania Sports and Enterprises*, 358 Pa. 62 (1947), 55 A. 2d 766, we said, allowing recovery: "It is, of course, true, as the appellant contends, that where artificial or natural conditions interpose on an owner's or occupier's premises to subject an invitee to unnecessary risk of harm, timely notice of the existence of the dangerous condition is ordinarily required as the basis of a finding of a breach of duty on the part of the owner occupier of the property. But that rule is not applicable to the situation here disclosed. This is not one of the type of cases frequently met with where foreign substances, wholly unconnected with or unrelated to a floor, suddenly appear thereon with risk to passing patrons. Here the irregular ice pocket or ridge in the entranceway was a likely and foreseeable result of the manner in which the rink and the passageway were being maintained to the knowledge of the defendant or, at least,

to the knowledge of responsible employees. Direct proof of the defendant's knowledge or opportunity to know of the negligent condition was not, therefore, essential to the imposition of liability on the defendant. Such knowledge necessarily attached to the defendant because of the anticipatable growth and presence of the congealing ice scrapings improperly left in the entranceway."

As for contributory negligence, a very similar case is *Falen v. Monessen Amusement Co.*, 363 Pa. 168 (1949), 69 A. 2d 65, where a theater owner was held responsible for injuries to a patron who fell in the theater's parking lot because the light was so dim that she mistook a ramp for a sidewalk curb and fell over the ramp. We allowed recovery, citing *Dively v. Penn-Pittsburgh Corp.*, 332 Pa. 65 (1938), 2 A. 2d 831, where we said: "It may be stated, therefore, that the controlling factors in determining the question of contributory negligence in accident cases of this nature are the degree of darkness and the justification for the injured person's presence in the place of danger."

See also *Murphy v. Bernheim & Sons, Inc.*, 327 Pa. 285 (1937), 194 A. 194, where we said: "When one walks in dim light where he has no reason to apprehend danger and uses his best judgment as he proceeds, and then meets with an accident, the question whether or not he is guilty of contributory negligence is usually for the jury."

In the instant case the plaintiff knew the lot from four years' use and met no dangerous condition when he parked his car. Returning later he could see until he got near his car and was watching his way as well as he could. He had no reason to anticipate danger from a displaced log. His conduct, therefore, as well as that of defendant in supplying inadequate lighting and allowing the log to move, were for the jury.

Finally, we do not regard the original verdict as excessive. Special damages, in this case $2133.50, are not necessarily a reliable measure of pain and suffering or loss of earning power. There being no question that the accident caused the back injury, we have a doctor saying this, when asked if plaintiff's current symptoms were permanent: "It is difficult to say. Often these symptoms will improve over the years and sometimes they will get worse over the years, so it is impossible to prognosticate the exact way that these backs will go. As a rule, a person of this type will have difficulty if he does a lot of heavy bending, lifting, becomes tired, becomes overly tense, that type of thing." The only cure for such pain would be a spinal fusion, a drastic procedure which the doctor said "we don't do unless we absolutely have to." The doctor's evidence clearly shows the future restriction on plaintiff's range of activity if he is to escape pain and hence the extent of the loss of his earning power: he is forty-four years old. He has suffered personality changes already and was described as a tense and nervous person. He is therefore in the medical dilemma of doing light work and suffering loss of earning power, or of forcing himself to do the kind of work that will cause him future pain and suffering and risking a drastic operation.

Either way one looks at it, this man's future has reasonably certain compensable disability which we regard as properly accounted for in the verdict unremitted. It is needless to belabor the authorities, since each situation must rest on its own keel, but we might mention *Glaister v. Eazor Express,* 390 Pa. 485 (1957), 136 A. 2d 97; *Spangler v. Helm's New York-Pittsburgh Motor Express,* 396 Pa. 482 (1959), 153 A. 2d 490; and *James v. Ferguson,* 401 Pa. 92 (1960), 162 A. 2d 690, where a thirty-six year old laboring man suffered a ruptured disc and faced a reduction to light

labor for the rest of his life—we affirmed an award of $70,155 on a base of $1500 in special damages.

Defendant has a criticism of the charge on the subject of actual or constructive notice, of which it asserts there was no evidence. Since we regard this doctrine inapplicable, defendant got better than it deserved to the extent that the trial judge mentioned it. The charge, as a whole, we think adequately presented to the jury the issue of negligence based on the adequacy of the lighting and the propensity of the log to move about.

The order of the court below overruling the motion for judgment n.o.v. is affirmed: its order directing a remittitur or a new trial is reversed and the record is remanded with instructions to reinstate the jury's verdict, and to enter judgment accordingly.

Mr. Justice BENJAMIN R. JONES dissents and would enter judgment for the defendant n.o.v.