Boyle *v.* Pennsylvania Railroad Company,
Appellant.

Argued April 21, 1961. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Gordon W. Gerber,* with him *Philip Price,* and *Barnes, Dechert, Price, Myers & Rhoads,* for appellant.

*Henry T. Reath,* with him *John M. Ross,* and *Duane, Morris & Heckscher,* for appellee.

*Bernard I. Shovlin,* for appellees.

OPINION BY MR. JUSTICE BOK, May 22, 1961:

These two appeals involve a runaway boxcar which had been left by defendant on a siding leading from the track of a local spur of the defendant's railroad. It struck two automobiles in its course and the people who were in them were injured and brought suit. In one case Mrs. Boyle, who was driving, was given $2500 by the jury and her husband, who was not along but

owned the car, was given $1000. In the other case Schoening, who owned his car and was driving it, was awarded $60,000. When its motions for judgment n.o.v. and for a new trial were overruled, defendant appealed.

Giving the plaintiffs the weight and inferences of the verdict that they won, it appears that defendant pushed the boxcar on to an abandoned siding and secured it on the slope. A hundred feet farther on there was a trestle and a level track. On the day of the accident there was no padlock on the switch from the main track to the siding, and one witness said that he had never seen one. There was evidence that the coordinating machinery between the switch and the automatic derailer did not work, and also that there was either no chock to hold the wheels or an inadequate one. There was a suggestion that the hand brake had not been tightly set up. It was admitted that there was no sounding or flashing signal at the intersection of the main track with the road where the accident happened. The train crew knew that children played on the railroad equipment on the siding.

On November 6, 1956, twenty-one hours after the boxcar had been put on the siding, a boy slacked off the hand brake and, being frightened when the car began to move, jumped off. The boxcar was loaded and weighed over sixty tons. It cleared the switch on to the main track of the spur, crossed several streets, and after three-quarters of a mile hit Schoening's automobile which was stopped for the traffic light at the intersection that the railroad crosses at an angle. This automobile, with Schoening inside, involved two other cars also waiting at the intersection, one of them the car of the plaintiffs Boyle, and was then carried by the front of the boxcar for 700 or 800 feet along the tracks before stopping. Schoening has no memory of the accident and was seriously injured.

Defendant contends:

1. There is no evidence of its negligence. This would work if the defendant's version of the accident were accepted, but the jury credited the plaintiffs' version and it is amply supported by the evidence: *Malitovsky v. Harshaw Chemical Co.,* 360 Pa. 279 (1948), 61 A. 2d 846.

2. The act of the boy in releasing the hand brake was not a superseding cause. The crew knew that boys played on the siding and in the cars: this fact distinguishes the case from *Rhad v. Duquesne Light Co.,* 255 Pa. 409 (1917), 100 A. 262. Nor is authority to be found in *Rapczynski v. W. T. Cowan, Inc.,* 138 Pa. Superior Ct. 392 (1940), 10 A. 2d 810, where a tractor was parked on a level street with its brake well set but with the key left in the lock. A boy started the motor, engaged the clutch, put the car in gear, and drove across the street, where another boy was found to be injured. The owner defendant was held not to be obliged to foresee such an event or such expert knowledge in the boy, who also was held not to be a trespasser on a public street. Rather is our case like *Reichvalder v. Borough of Taylor,* 120 Pa. Superior Ct. 217 (1935), 181 A. 864, affirmed at 322 Pa. 72 (1936), 185 A. 270, which involved a complex road-scraper left on a vacant lot. This court held that this object was a natural attraction to children and that its owner should know that this was so. See also *Euler v. Pittsburgh,* 85 Pa. Superior Ct. 542 (1925); *Cusatis v. Lehigh Valley Railroad Co.,* 152 Pa. Superior Ct. 193 (1943), 31 A. 2d 572.

3. The court failed to charge as requested by defendant on the subject of reasonable precautions taken by its employes. The charge as a whole, with special reference to the general principles of negligence, was clear and adequate. A trial judge is not required to adopt counsel's language in his charge: he may use his own language if it is accurate: *Huth v. Allegheny*

*County,* 339 Pa. 228 (1940), 13 A. 2d 18; *Pavia v. State Mutual Life Assurance Co.,* 179 Pa. Superior Ct. 272 (1955), 116 A. 2d 762.

4. A doctor was allowed to testify about "possible future conditions" in making his prognosis. This doctor said about plaintiff's neck and head tilt: "I would certainly think it was permanent. . . . I am sure that is permanent." The condition is abnormal and there is no harm in allowing the doctor to explain the possible future effects of the disability. The case is not an anologue of *Lorch v. Eglin,* 369 Pa. 314 (1952), 85 A. 2d 841, but rather of *Stevenson v. Pennsylvania Sports Enterprises, Inc.,* 372 Pa. 157 (1952), 93 A. 2d 236, where we said: "The problem here involved is one of prognosis on which a doctor cannot be required to express his opinion with the definiteness required in a causation question. In many cases of personal injury the honest opinion of a doctor may well be that a plaintiff will 'gradually improve' or that the injury may 'possibly be permanent or may possibly get better within a year.'. This uncertainty of honest medical opinion should not be the basis for any finding by the jury of *permanent* injury but is sufficient, on the other hand, for the jury to find some future disability." (Original emphasis)

5. The Schoening verdict of $60,000 was excessive. He suffered eight broken ribs, a comminuted fracture of the clavicle, and a compression and dislocation of the fifth cervical vertebra. Lacerations of the head, including an ear that hung by a thread, needed over a hundred stitches to close. The head scars prevent his parting his hair. His permanent tilt and restricted neck motion, together with the effect on his appearance, and his nervousness, anxiety, personality changes, and the limitations on his activities as described by his doctor, fully justify the verdict. His special damages were just under $2500, not counting his salary, which

was paid him during the 4½ months when he was wholly and then partly incapacitated, but with permanent injuries the amount of special damages, when small, loses its significance: see *O'Connell v. Roefaro,* 391 Pa. 52 (1958), 137 A. 2d 325; *James v. Ferguson,* 401 Pa. 92 (1960), 162 A. 2d 690; *Vardzel v. Dravo Corp.,* 402 Pa. 19 (1960), 165 A. 2d 622.

6. In rebuttal plaintiff said that he had been examined by a defendant's doctor who had not been called to testify, and the trial judge refused cross-examination about plaintiff's doctors who had examined him but had not been called to the stand. Had these doctors known anything detrimental to plaintiff's case defendant could have called them and no doubt would surely have done so. Its present complaint involves only the shadowy thrust and riposte of an artful presumption which under the circumstances here is insubstantial. We think that neither the allowance nor refusal of the suggested cross-examination could be an abuse of discretion.

The judgments are affirmed.