Walsh, Appellant, *v.* Brody et al.

Argued September 16, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Howard E. Davidson,* with him *Astor & Weiss,* for appellant.

*Howard M. Girsh,* with him *Steinberg and Girsh,* for appellee.

OPINION BY CERCONE, J., December 13, 1971:

Plaintiff appeals from the lower court's refusal to grant her a new trial after a verdict in her favor in the amount of $1,250.00 in a trespass action instituted by her to recover for personal injuries sustained in an automobile accident.

It is the plaintiff's contention that the trial court improperly limited the testimony of plaintiff's physician with regard to the effect of plaintiff's left eye injury on her (1) pre-existing cataract; (2) mental suffering; and (3) chances of future total blindness since plaintiff had lost the sight in her right eye in childhood.

Plaintiff's evidence proved that on May 13, 1965 she was a passenger in the rear seat of an automobile owned and operated by her sister, Mrs. Helen Conroy. While the automobile was stopped in a line of traffic, it was struck in the rear by an automobile owned and operated by the defendant Gerson Brody, the impact throwing the plaintiff into the front seat, injuring her neck and breaking her glasses.

Plaintiff's physician, Dr. Martin Garfinkle, testified that she sustained an acute traumatic cervical strain, nervous anxiety and a post-concussion syndrome, which conditions cleared up within a month. Dr. Garfinkle's bill was $55.00 and the hospital bill for emergency service was $25.25.

To sustain her claim of the eye injury and the future effect thereof, plaintiff at trial called her ophthalmologist, Dr. Howard Clough, who testified that the plaintiff had sustained, either directly or by aggravation to the existing condition of her left eye, a schisis (or splitting) of the retina. This doctor testified that

plaintiff had a cataract in the same left eye. He tes-
tified that the "injury to the retina does not have an
effect on the cataract," but that the plaintiff "at some
time in the future will need a cataract operation". In
attempting to secure the doctor's opinion as to the ef-
fect of the injury to the retina on the future surgery
relative to the cataract, plaintiff propounded the fol-
lowing question to Dr. Clough: "Q. Doctor, because of
your treatment and history of Mrs. Huntly do you have
an opinion with reasonable degree of medical certainty
as to whether the schisis of the retina will play a role
either—of any type—in regard to any other abnormali-
ty that you might have noted in her eye?"

Plaintiff's counsel also asked Dr. Clough whether
he had arrived at a prognosis "in regard to any compli-
cations which will probably arise as a result of that
injury with reference to that eye". Both of these ques-
tions were objected to by the defendant and the objec-
tions were sustained. Plaintiff was thus prevented
from securing the doctor's opinion as to the effect of
the injury to the retina of the left eye on the cataract
surgery to be performed on that eye. This was clear
error as the plaintiff should have been permitted to
prove whether or not the injury made the cataract op-
eration more difficult to perform and more serious in
its consequences.

The questions proposed did not have to meet the
criteria of the cases relied upon by defendant, which
relate to the causal connection between the injury and
the condition complained of. The doctor had already
testified as to the causal connection between the schisis
or splitting of the retina and the accident. The ques-
tions not permitted by the court below dealt not with
the causal connection between the condition and the
accident, but as to the effect, if any, of the said condi-
tion on the operation to be performed for the removal

of the cataract. The causal connection having already been proved, the possible future effects of the schisis or splitting of the retina was a matter for explanation by Dr. Clough. What was said by the Supreme Court of Pennsylvania in *Boyle v. Pennsylvania Railroad Company*, 403 Pa. 614 (1961) is equally applicable to the facts of this case. The court there stated: "The condition is abnormal and there is no harm in allowing the doctor to explain the possible future effects of the disability."

The *Boyle* decision was approved and applied by this court in *Schwegel v. Goldberg*, 209 Pa. Superior Ct. 280 (1967), where we held it was not error for the trial court to permit the plaintiff's doctor to testify as to the probability of plaintiff suffering from epileptic seizures as the result of the fracture of the skull accompanied by bruising or contusion of the brain. This court there stated: "Likewise in this case [as in the *Boyle* case], a scar on the brain, an abnormal condition, resulted from the accident. There was no speculation or guessing as to that medical fact. Nor was the neurosurgeon speculating or guessing when, based on statistics in his field of expertise, he indicated the probabilities of this particular plaintiff suffering from epileptic seizures as a result of a condition caused by this accident. There is nothing evidentially improper about this testimony. If we were to rule it out we would be holding that such possible future effects are not entitled to any consideration as a matter of substantive law. See II Wigmore, Evidence §663(1), (3d Ed. 1940). That would be unfair since the action must be brought within the time limitations fixed by our law and all damages, past, present and future, must be determined in that one action."

As argued by plaintiff, the error in not allowing the jury to hear Dr. Clough's explanation of the effects of

the injury on the cataract surgery harmed plaintiff not only with respect to the damages she was entitled to as a result of the effects of the injury on future surgery, but also damaged plaintiff in her proof as to the mental anxiety suffered by her because of the increase in the hazards of the cataract surgery. Without this proof of the increase in the hazards attendant to the cataract surgery, the jury could not properly assess plaintiff's claim for mental anxiety. That such anxiety is compensable was demonstrated in *Dempsey v. Hartley,* 94 F. Supp. 918 (E.D. Pa. 1951), wherein the court stated: "The issue here was not the possible or even probable development of cancer in this plaintiff as a result of this accident. The testimony [of the plaintiff's physician] was admitted for the purpose of showing that this plaintiff did have a very real fear of the development of cancer of the breast and that her fears in this respect were reasonable. The appellate courts in Pennsylvania have frequently held that such suffering is compensable."

The court also committed error when, after permitting Dr. Clough to testify that as a result of the injury to plaintiff's only good eye plaintiff had approximately a one in twenty chance of losing her sight entirely, it refused to permit the doctor to answer the further question: "Doctor, what chance does the average person have of going blind?" By refusing to permit the doctor to answer this question, the trial judge left the jury without any measuring stick with which it could assess the harm suffered by the plaintiff, for it was left without a reference point from which to compare plaintiff's probability of blindness with the probability of an average person losing his eyesight. The doctor's testimony that plaintiff's chances of going blind were one in twenty is meaningless without knowing what the average person's chances are of going

blind. If the injury increased the chances of plaintiff's total blindness over and above the chances of an average person going blind, that would be an element of damage recoverable by plaintiff.

A new trial is therefore granted plaintiff so as to provide her with the opportunity to fully develop the effect of the eye injury on her cataract operation, on her chances of blindness, and on her mental state.

Judgment reversed and case remanded for new trial.