## Santana v. Lucas

C.P. of Philadelphia County, October Term 2003, no. 2300.

*Regina A. Vogelsong,* for plaintiffs.
*Elizabeth Ann Gray,* for defendant.

LYNN, *J.,* November 30, 2005—

## I. FACTS AND PROCEDURAL HISTORY

On March 28, 2005, the above matter was tried before the undersigned, sitting with a jury. Plaintiffs, Luz Santana and Wilmer Sanchez, h/w filed a civil action against defendant, Barbara Lucas, for personal injuries sustained from an automobile accident on May 16, 2002. The jury returned a verdict in favor of plaintiff in the amount of $168,000. Thereafter, plaintiff filed a motion for delay damages and defendant filed post-trial motions for a new trial, and/or to mold the verdict.

Defendant's post-trial motions were denied by this court on July 7, 2005, and plaintiff's motion for delay

damages was granted. Defendant filed a timely notice of appeal to the Superior Court. This court ordered defendant, the moving party, to file a concise statement of matters complained of on appeal pursuant to Rule 1925(b) of the Rules of Appellate Procedure within 14 days. Defendant filed a response on September 14, 2005.

The evidence at trial established that on May 16, 2002, plaintiff Santana was driving south on Castor Avenue towards St. Vincent Street and saw that she had a green light. As she proceeded through the intersection the defendant's car made a left hand turn in front of her. She stated that she was traveling the speed limit, 30 miles an hour, had a clear view of travel before entering the intersection and did not see the defendant prior to impact and tried to veer to the left to avoid hitting the defendant's vehicle. However, her vehicle hit the passenger side of defendant's vehicle. She stated that the impact "pretty much threw me out of my seat, threw me forward and then back." Her face hit the steering wheel and her knees hit the dashboard. She was also bleeding from her mouth and her knee as well as having a swollen nose. (N.T. 3/29/05. pp. 44-51.)

After the accident, plaintiff Santana testified that someone called her husband and he arrived at the scene. She stated that she was fuzzy, confused and a bit disoriented from the accident. She did not exit her vehicle until the paramedics removed her and transported her to Albert Einstein Hospital. Plaintiff Santana testified that she was very achy the next morning and sore all over. She stated she could not take care of her children or her husband. (N.T. 3/29/05, pp. 51-54, 56.) She went to her primary care physician who recommended physical therapy. She

then went to see Dr. John Fisher for therapy for about five months and he sent her for an MRI. She was only out of work for approximately six weeks even though she was in a lot of pain. Plaintiff stated that even though she stopped treatment with Dr. Fisher, she had never fully recuperated. She never recovered from the injuries to her neck or back. (N.T. 3/29/05, pp. 54-61.) Plaintiff then testified that she went back to her family doctor because of the pain in January 2004. Dr. DeJoseph gave her some pain medication and in April sent her for more x-rays. According to plaintiff, he then referred her to an orthopedic doctor who gave her a cortisone shot and recommended more physical therapy. Plaintiff Santana testified that she did not go to therapy because she could not afford the payments. She also stated that she was recommended to Dr. Kenneth Izzo who performed an EMG and some additional testing. After a few months, Dr. Izzo recommended surgery for her neck and low back. (N.T. 3/29/05, pp. 62-67.)

As to her injuries, plaintiff testified that as a result, she has not been able to enjoy her life as she had prior to the accident, she cannot enjoy the same things with her daughter that she did with her son at the same age. Her relationship with her husband has changed, she cannot give her daughter a bath, getting dressed, cleaning her house, walking up and down the steps, and doing laundry, etc., has been affected by the accident. (N.T. 3/29/05, pp. 69-72.)

Plaintiff Sanchez next testified about the injuries and limitations his wife suffered from the accident. He stated that his wife is still in pain and he now takes care of their daughter more than before. The accident has also affected the intimacy of their marriage. (N.T. 3/29/05, pp. 9-28.)

Defendant testified that she was driving north on Castor Avenue on the day of the accident and intended to make a left hand turn onto St. Vincent Street. She stated that the light was green and after she came to a complete stop, she had her turn signal on, she proceeded because she did not see any other car coming towards her. Defendant testified that she was already into her turn, into the right hand lane, when she heard screeching tires. She immediately turned her head and saw a car headed towards her. (N.T. 3/30/05, pp. 32-37.) Defendant also testified that she was injured from the accident and suffered pain in her back, neck, shoulder and knee. (N.T. 3/29/05. p. 51.)

## II. ISSUES

Defendant raises the following issues on appeal:

(1) The court erred in permitting physiatrist, Kenneth Izzo M.D., to testify to potential future treatment and costs associated with same despite defendant's objections that the testimony was speculative and, therefore, inappropriate for the jury to consider.

(2) The court erred in excluding the January 20, 2005 supplemental report of orthopedic surgeon, Arnold Berman M.D., and his testimony concerning same when that report merely elaborated on his earlier report concerning his review of plaintiff's lumbar spine MRI.

(3) The court erred in charging the jury as follows:

"I instruct you that a negligent defendant takes a victim as it finds her and is liable for the full extent of damages inflicted even though the damage is greater than it would otherwise be because the plaintiff is particularly susceptible to injuries. A negligent defendant is respon-

sible for all the injuries caused by his actions, and if the plaintiff, because of a peculiar condition or susceptibility, is injured more than she would have been had she not had such a pre-existing condition or susceptibility, the negligent person is responsible for all the injuries resulting from her act.

"One may be inflicted with a latent pre-existing condition which is aggravated, accelerated or precipitated by a negligent act of another. In such a situation the wrongdoer is held responsible for the injury so produced even though so great an injury would not have been produced in a person not so inflicted."

Defendant objected to plaintiff's proposed point for charge no. 21 as stated above. The court overruled defendant's objection and read the charge as stated.

(4) The court erred in refusing to reread the point for charge regarding a motorist's duty to have his vehicle under control to the jury in response to the jury's question, "Can we have a copy of the law concerning control of an automobile?"

(5) The court erred in refusing to have the jury correct its inconsistent verdict and/or in failing to mold the verdict to reflect the fact that the jury found only 80 percent causal negligence on defendant Barbara Lucas.

(6) The court erred in failing to remit the verdict as it was excessive in light of the record and was against the weight of the evidence.

(7) By order dated July 7, 2005, this honorable court granted plaintiff's motion for imposition of delay damages and molded the verdict to $169,524.60. The court erred in granting delay damages at all and further erred in granting the amount it did.

## III. DISCUSSION

Defendant's first argument is that this court erred in permitting physiatrist, Kenneth Izzo M.D., to testify to potential future treatment and costs associated with same despite defendant's objections that the testimony was speculative and, therefore, inappropriate for the jury to consider. In reviewing a trial court's admission of testimony, the Superior Court will reverse only if there has been an abuse of discretion or error of law. *Gatto v. Kisloff,* 437 Pa. Super. 328, 649 A.2d 996 (1994); *Dolan v. Carrier Corporation,* 424 Pa. Super. 615, 618, 623 A.2d 850, 852 (1993). See also, *Gemini Equipment Co. v. Pennsy Supply Inc.,* 407 Pa. Super. 404, 412, 595 A.2d 1211, 1215 (1991); *Smith v. Brooks,* 394 Pa. Super. 327, 336, 575 A.2d 926, 930 (1990).

Defendant argues that the testimony of Dr. Izzo that related to the potential future medical treatment and costs of plaintiff Santana was speculative. However, this court correctly overruled the defendant's objection as it was not clear that his testimony was speculative or based on mere conjecture. Defendant argues that Dr. Izzo's opinion was a guess and/or based on conjecture; however Dr. Izzo was one of plaintiff Santana's treating physicians. The purpose of her visit was to be evaluated for medical treatment or recommendations. Dr. Izzo discussed the examination of plaintiff Santana and the reports he reviewed from her other treating physicians. (Deposition testimony of Dr. Izzo, 1/21/05, pp. 15-39.) Based on Dr. Izzo's physical examination of plaintiff, and Dr. Izzo's practice of medical pain management, he was asked about the cost of any future medical care for plaintiff. Dr. Izzo opined that plaintiff was suffer-

ing from permanent injuries to her neck and back which would require additional medical treatment. The responses of Dr. Izzo were not speculative, not based on conjecture. Based on the injuries sustained by plaintiff and the pain she still suffered from, it was not speculative to state that she would need surgery and additional medical treatment to either correct the problem or alleviate the pain. Dr. Izzo was absolute in his opinion that plaintiff would require additional treatment for her injuries. Nor was it speculative to estimate the cost to plaintiff where he could. Dr. Izzo explained there were three treatment levels and the costs associated with each one. (Deposition testimony of Dr. Izzo, 1/21/05, pp. 40-45.)

While it is not appropriate for the witness to guess or state an opinion based on mere conjecture, Pa.R.E. 602, the Supreme Court has ruled that where there is sufficient evidence that treatment would continue into the future, past medical treatment alone was a sufficient basis to sustain a monetary recovery for future treatment. *Pratt v. Stein,* 298 Pa. Super. 92, 444 A.2d 674 (1982); see also, *Walsh v. Brody,* 220 Pa. Super. 293, 286 A.2d 666 (1971). Here, testimony was presented as to plaintiff Santana's past medical treatment, as well as her need for future treatment as these injuries were determined to be permanent. Therefore, it was not error for this court to allow Dr. Izzo's testimony.

The defendant next argues that this court erred in excluding the January 20, 2005 supplemental report of orthopedic surgeon Arnold Berman M.D., and his testimony concerning same when that report merely elaborated on his earlier report concerning his review of plaintiff's lumbar spine MRI. This court granted plaintiff's motion be-

cause the supplemental report of Dr. Berman was provided to plaintiff after the close of discovery and just before the deposition of the medical expert and was deemed by this court to be unfair to the plaintiff. While this court was quite aware of the rule and/or custom that allows defendants to give their expert witness notice at the beginning of trial, this particular case was different. The defendant was not prejudiced by the exclusion of this report as defendant's expert was still able to testify to the same findings and conclusions that were in the January 20, 2005 report since this report contained substantially the same material findings as his November 9, 2004 report. Therefore, no prejudice was suffered by defendant and the supplemental report was properly excluded.

The defendant's third argument is that this court erred in charging the jury as follows:

"I instruct you that a negligent defendant takes a victim as it finds her and is liable for the full extent of damages inflicted even though the damage is greater than it would otherwise be because the plaintiff is particularly susceptible to injuries. A negligent defendant is responsible for all the injuries caused by his actions, and if the plaintiff because of a peculiar condition or susceptibility is injured more than she would have been had she not had such a pre-existing condition or susceptibility, the negligent person is responsible for all the injuries resulting from her act.

"One may be inflicted with a latent pre-existing condition which is aggravated, accelerated or precipitated by a negligent act of another. In such a situation the wrongdoer is held responsible for the injury so produced

even though so great an injury would not have been produced in a person not so inflicted."

Defendant objected to plaintiff's proposed point for charge no. 21 as stated above. The court overruled defendant's objection and read the charge as stated.

"A motion for a new trial based upon the sufficiency of the jury charge will only be granted when the court determines that the charge in its entirety and against the background of the evidence was erroneous and might have prejudiced [the complaining party]." *O'Sullivan v. Joy Technologies Inc.,* 446 Pa. Super. 140, 150, 666 A.2d 664, 669 (1995). Moreover, the trial judge has wide latitude in charging the jury so long as the judge fully conveys the laws of the case to the jury. *Levine v. Rosen,* 19 Phila. 529 (1989).

Defendant argues that the court's charge to the jury was in error as there was no evidence produced at trial that the plaintiff was "particularly susceptible to injuries," nor that she had a "peculiar condition or susceptibility" nor a "latent pre-existing condition which was aggravated, accelerated or precipitated by a negligent act of another." In the instant case, the defendant's medical expert testified that plaintiff's condition was degenerative and predated the accident. Plaintiff testified that she had fallen and injured her back in April 2000. (N.T. 3/29/05, p. 38.) Nevertheless, the jury was instructed that it was their recollection and interpretation of the evidence that controlled the case. (N.T. 3/31/05, pp. 54-55.) They were also told that this court had no view on the facts of the case and regardless of any view this court may have with regard to the facts, it was not binding on them. (N.T. 3/31/05, pp. 55-56.) The jury was free to believe or dis-

believe any of the testimony. The jury was the sole judge of the credibility or believability of each witness. (N.T 3/31/05, pp. 60-62.)

The jury charge, read in its entirety, must be fundamentally flawed in order to constitute grounds for post-trial relief and must have altered the result of the trial itself. *Reilly by Reilly v. SEPTA,* 507 Pa. 204, 489 A.2d 1291 (1985). Upon careful consideration of the jury charge, this court finds the charges given were proper.

The defendant's fourth argument is that this court erred in refusing to reread the point for charge regarding a motorist's duty to have his vehicle under control to the jury in response to the jury's question, "Can we have a copy of the law concerning control of an automobile?" During deliberations, the jury asked for a copy of the law concerning control of an automobile. However, prior to the jurors being brought back into the courtroom as this court was not going to give them a copy of the law, the jury sent another note advising the court that they "worked it out." The court asked both plaintiff's counsel and defense counsel whether they agreed that the jury no longer needed the assistance of the court and both agreed. (N.T. 3/31/05, pp. 90-91.) The jury was polled and each agreed with the verdict as read. As such, there was no error in not reading the law concerning control of an automobile to the jury.

The defendant's next argument is that the court erred in refusing to have the jury correct its inconsistent verdict and/or in failing to mold the verdict to reflect the fact that the jury found only 80 percent causal negligence on defendant, Barbara Lucas, and that the verdict was

excessive in light of the record and was against the weight of the evidence.

It is well established that the trial court has wide discretion on whether or not to grant a new trial. *Coker v. S.M. Flickinger Company Inc.,* 533 Pa. 441, 625 A.2d 1181 (1993). "A trial court may only grant a new trial when the jury's verdict is so contrary to the evidence that it shocks one's sense of justice." *Neison v. Hines,* 539 Pa. 516, 520, 653 A.2d 634, 636 (1995). A new trial should not be granted on a mere conflict in testimony, *Baldino v. Castagna,* 505 Pa. 239, 478 A.2d 807 (1984), or because a trial judge on the same facts would have arrived at a different conclusion. *Nudelman v. Gilbride,* 436 Pa. Super. 44, 647 A.2d 233 (1994).

The duty to assess damages is squarely within the province of the jury, who as the finders of fact weigh the veracity and credibility of the witnesses and their testimony. *Dranzo v. Winterhalter,* 395 Pa. Super. 578, 577 A.2d 1349 (1990); *Cree v. Horn,* 372 Pa. Super. 296, 539 A.2d 446 (1988), *appeal denied,* 519 Pa. 660, 546 A.2d 621 (1988). The Superior Court has stated that the standard upon reviewing a trial court's decision that damages were adequate and that it should thus refuse to grant a new trial is extremely narrow:

"It is well established law in the Commonwealth that a decision to grant a new trial because of any impropriety in the verdict is well within the discretion of the trial court and in the absence of a clear abuse of its considerable discretion will not be disturbed on appellate review. *Reitz v. Donise Enterprise,* 319 Pa. Super. 76, 465 A.2d 1060 (1983). Our court has set forth the following criteria to determine when a verdict can be set aside as inadequate:

"A verdict is set aside as inadequate when it is so inadequate as to indicate passion, prejudice, partiality, or corruption, or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff. If the verdict bears a reasonable resemblance to the damages proved, the appellate court will not disturb the verdict merely because the damages are less than the reviewing court might have awarded. (citations omitted) *Slaseman v. Myers,* 309 Pa. Super. 537, 540-41, 455 A.2d 1213, 1215 (1983)." *Smith v. Barker,* 368 Pa. Super. 472, 475-76, 534 A.2d 533, 535 (1987), *appeal denied,* 520 Pa. 577, 549 A.2d 137 (1988).

To support the grant of a new trial for inadequacy of the damage award, the injustice of the verdict "should stand forth like a beacon." *Dranzo, supra* at 585, 577 A.2d at 1352; *Cooley v. Jefferson Bank,* 355 Pa. Super. 1, 4, 512 A.2d 713, 714 (1986) (citing numerous cases). In *Dranzo,* the court found that Mrs. Dranzo suffered severe injuries in the accident, primarily a fracture to her left hip and her left heel. She still had pain, a permanent limp and her earning capacity had been permanently diminished. The parties stipulated to the amount of medical expenses and wage loss, amounting to a total of $23,416.01. The jury had returned a total verdict of $118,736.01 for Mrs. Dranzo, damages in the amount of $27,000 for her daughter, and damages in the amount of $5,000 for her husband's loss sustained as her husband and in the amount of $13,070.90 for loss sustained as his daughter's father. On appeal, the trial court wrote:

"No doubt the injuries suffered by Mrs. Dranzo may well have supported a considerably higher verdict, but

the fact remains that all of this evidence was presented to the jury, and this court cannot say that the amount of the verdict shocks the conscience of the court. Generally, the consortium claim of her husband, John Dranzo, rests on the oral testimony of these plaintiffs, and essentially, the amount awarded must be determined by the good sense of the jury upon consideration of all the evidence." Opinion, 7-21-89 at 17.

The Superior Court agreed with the trial court and found that no injustice had been done in the case.

In the instant case, as in *Dranzo,* the allegation that this court should have changed the jury verdict must fail. As stated above, it is the jury's province to determine the amount of damages. This court has determined that the award of damages was acceptable based on the evidence presented by plaintiff. Here, the verdict and the amount award thereof does not stand forth like a beacon.

Defendant argues that the verdict was inconsistent because they answered Question no. 5 that plaintiff was 20 percent comparatively negligent. (N.T. 3/31/05, p. 97.) However, the jury found that the plaintiff's negligence was not a factual cause of her harm. A careful reading of the verdict sheet that both plaintiff and defense counsel agreed upon, if the jury answered "no" to Questions no. 3 or 4, they were to go to Question no. 6 and not answer Question no. 5. (N.T. 3/31/05, pp. 92-93, 95.) Additionally, after defense counsel requested that the jury be questioned as to why they answered Question no. 5 after answering "no" to Question no. 4, this court had the jury foreman confirm the verdict and the fact that the jury agreed that plaintiff's negligence was not a factual cause

of her harm. (N.T. 3/31/05, p. 97.) As the verdict was consistent with the jury's finding that plaintiff's negligence was not a factual cause of her harm, the verdict was not inconsistent and could be recorded as stated by the jury.

The defendant also argues that because the arbitration award to plaintiff was only $21,043.75, the verdict found by the jury is excessive. In this case, the defendant appealed the arbitration award. Moreover, an appeal from an arbitration award results in a trial de novo. While the evidence submitted may have supported different verdict amounts, this court will not invade the province of the jury to substitute its standards over those of the jury after careful deliberations. See *Botek v. Mine Safety Appliance Corp.,* 531 Pa. 160, 611 A.2d 1174 (1992). There is no evidence that the verdict resulted from passion, prejudice, partiality or corruption and, therefore, no alteration of the verdict will be awarded or a new trial granted.

Lastly, defendant argues that this court erred in granting delay damages and further erred in granting the amount it did. The point at which delay damages start to accrue is dependent on when the action was filed. Three issues arise as to the proper calculation of delay damages in this case. First, plaintiff should not be penalized for the postponement of trial from January 2005 to March 2005 due to counsel's trial schedule. The plain language of Rule 238 makes it clear that plaintiff's conduct will affect delay damages award where such conduct "caused the delay of trial." Pa.R.C.P. 238(b)(2), 42 Pa.C.S. In addition, the Explanatory Comment to Rule 238 further states that "[w]ith respect to the delay of trial, not every procedural delay is relevant to the issue of delay dam-

ages, but only such occurrences as actually cause delay of the trial." Rule 238. Explanatory Comment, 519 Pa. LXXII, LXXV.

When plaintiff's counsel was notified of the placement of this matter in the January trial pool, he immediately notified the court and defense counsel that he had two previous trials already scheduled in the January trial pool. Defendant argues that since plaintiff's counsel's schedule caused the postponement of trial from January 2005 to March 2005, defendant should not be liable for delay damages for this period of time. However, plaintiff did not cause the postponement of trial in bad faith. This court fails to see how the purposes of Rule 238 are served by penalizing the plaintiff for her counsel's schedule which is beyond her control.

Moreover, it would be unreasonable and unjust to deny delay damages where both parties are blameless. *King v. SEPTA,* 383 Pa. Super. 420, 422, 557 A.2d 11, 12 (1989). "Fundamental fairness would require . . . that the plaintiffs receive interest on what is essentially their money for the period that is held by the defendants who . . . had use of that money . . . . Awarding 'delay damages' under such circumstances does not penalize defendants . . . because they had an opportunity to protect themselves from exposure to delay damages by making a reasonable offer of settlement in good faith and in timely fashion." *Id.* at 422, 557 A.2d at 12 (citing trial court opinion at 6). The Supreme Court of Pennsylvania has held that even delays attributable to the judicial system are chargeable to the defendant. See *e.g., Craig v. Magee Memorial Rehabilitation Center,* 400 Pa. Super. 126, 133, 582 A.2d 1376, 1380 (1990).

The drafters of the revised rules "have not allowed for the exclusion of periods of delay not caused by either party." *King v. SEPTA,* 383 Pa. Super. 420, 424, 557 A.2d 11, 13 (1989) quoting *Miller v. Wise Business Forms Inc.,* 381 Pa. Super. 236, 241, 553 A.2d 443, 446 (1989). Therefore, since plaintiff is not responsible for the postponement of trial in January 2005, defendant would be liable for its share of the delay damages accrued.

Secondly, Rule 238 (a)(2)(ii) provides that "damages for delay shall be awarded for the period of time in an action commenced on or after October 1, 1989, from a date one year after the date original process was first served in the action up to the date of the award, verdict or decision." Pa.R.C.P. 238(a)(2)(ii). It is uncontested that defendant was first served on February 13, 2004. It then follows that February 13, 2005, would be the date one year after the date original process was served on the defendant. Moreover, the parties also do not contest that March 31, 2005, the date of this court's liability determination, is the date of award, verdict, or decision. Therefore, delay damages were to be calculated from February 14, 2005 to March 31, 2005 and were properly awarded.

## IV. CONCLUSION

In summary, this court has carefully reviewed the entire record and finds no harmful, prejudicial or reversible error and nothing to justify the granting of defendant's motion.