**BEATRICE FOODS COMPANY et al.,**
Appellants,

v.

**Donald CHATHAM, Appellee.**

Court of Appeals of Kentucky.

March 8, 1963.

Rehearing Denied Sept. 27, 1963.

Joseph J. Leary, Frankfort, for appellants.

Bernard Davis, Shelbyville, for appellee.

STANLEY, Commissioner.

A fire destroyed a building in Shelbyville, the first or main floor of which was occupied by the Begley Drug Store and the basement occupied in part by offices of Dr. Donald Chatham and his associate, who were Begley's subtenants. The furnace and other facilities under the control of Begley were also in the basement. Among them was a refrigerating plant serving the drug store. It was owned and maintained by the Kentucky Ice Cream Company, which sold ice cream to Begley. That company was a wholly owned subsidiary of the Beatrice Foods Company. The fire occurred early in the morning of February 10, 1960.

Dr. Chatham sued Begley and the other two companies to recover damages for the loss of his office equipment and other personal property in the fire. The ground of the action was negligence in permitting defective electrical equipment and waste material in the basement. The verdict exonerated Begley but awarded $10,613.76 to the plaintiff against the other two defendants. They appeal from the judgment on the grounds that the court erred in denying them a directed verdict and that the verdict is not sustained by sufficient evidence and is contrary to law because based upon conjecture and speculation.

The question of error is two-fold, namely, proof of causation and of negligence.

On several recent occasions before the fire Begley had experienced a frequent blowout of a 100 ampere fuse in the line which serviced, among other installations, the refrigerator's electrical motor. This may have been caused by overloading current when several motors ran at the same time, or, according to an electrician, because of some "malformation or abnormality in the particular circuit." Adjustment in the interior service line had been made about a month before the fire, and it appears there was no more trouble with a blown-out fuse.

In the late afternoon of February 2, eight days before the fire, Dr. Chatham, smelling something burning, discovered a pall of smoke like a cloud hovering at the basement ceiling. The fumes were acrid and irritating, causing him to cough and his eyes to water. Dr. Chatham walked by the compressor motor and was positive that the smoke and odor came from it. Begley's manager, Calvin Dunavan, had also discovered the condition and cut off the motor shortly before Dr. Chatham's employee reported it.

The next morning Dunavan called the Ice Cream Company's office in Richmond and reported that its refrigerator motor had "gone out" and that his ice cream would be getting soft. The company's mechanic and service man, John L. Henry, came promptly to Shelbyville. The plaintiff called him as a witness. He testified that the only thing he found wrong with the equipment was that the belt connecting the motor with the compressor was slipping, and he tightened it. He also oiled the motor and checked the brushes. Henry had usually checked the company's motors four times a year and had attended to this motor regularly. A discrepancy developed in this witness' testimony and that of Dunavan.

Henry said that when he arrived that morning the motor was running, while Dunavan testified that he had cut off the motor the evening before. The plaintiff elicited from Henry that odors and smoke, as described, would indicate the motor was overheated and that would cause the winding to char and crack or break down and increase the amperage. He also testified that smoke might indicate that the connecting belt was scorched or burning, although, as stated, he found no evidence of such condition in the motor or the belt.

The electric motor rested on a concrete floor but was five to eight inches from a partition wall of frame and plaster and four to six feet from a wooden stairway.

Russell Anderson, an employee of the Kentucky Utilities Company, got to the fire very soon after it was discovered and cut the electric current from the building. He assisted the firemen to get inside. He found "right smart fire" in the general area of the foot of the stairway and the refrigerator motor. The chief of the fire department, Rhene Strange, testified to the same fact. He stated that the fire had burned from that point through the first floor and straight up through the roof of the building, and that was the only place that showed that type of burning. Chief Strange investigated the source of the fire that morning and later. From his observations, training and experience he expressed the view that the origin of the fire was in the area of the motor. On the day following there was an "uprising of fire" in the debris over the motor.

Other witnesses testified and some pictures showed that there was a hole burned in the ceiling just above the refrigerating equipment and none elsewhere.

As the point posed is the sufficiency of the plaintiff's evidence to go to the jury, we deem it enough to say that no witness undertook to testify as a positive fact that he knew how the fire started; that the defendants' employee testified positively that the trouble with the motor the week before was not sufficient to have caused the fire and that he remedied it; that an expert electrician had taken the motor apart after the fire and found no indication that it was in a defective condition and had testified and demonstrated to the jury that there were only two nonmetal components of the motor, i. e., insulation on the wire and a small amount of "wool wicking," and that the former might smolder but would not produce a flame, and the latter, because of its highly combustible material, would have burned out quickly if there had been any heat applied. Some other conditions in the motor indicated, according to these witnesses, that it was not the origin of the fire. The jury might well have accepted all this evidence as overcoming or negating the plaintiff's proof, but it chose to accept the plaintiff's evidence as the truth of the matter.

■ Of course, in order to impose liability for loss or injury by fire it must have been proved to have resulted from the negligent or wrongful act complained of. And we have many times affirmed that a verdict founded wholly upon speculation and surmise cannot be sustained. But the line between what is speculative proof and what is circumstantial or inferential proof is sometimes dim and uncertain. The jury is instructed to reach its verdict "from the evidence;" and if there was competent and relevant evidence affording a reasonable and logical inference or conclusion of a definite fact, this court will not invade the jury's province to weigh conflicting evidence, judge the credibility of witnesses and draw the ultimate conclusion.

■ Upon the question of the cause of the fire, we think that the evidence favorable to the plaintiff as above summarized was abundantly ample. Upon the question of negligence, we think the physical facts and persuasive circumstances were enough to afford a reasonable inference that the defendants' employee, Henry, had not permanently remedied an admitted defective condition of the motor, although there had

been no reoccurrence of its manifestation during the intervening week.

Often cases of this kind must be decided upon circumstantial evidence, for the actual beginning of a fire—particularly in the nighttime, as here—was not seen. Appellants cite several cases in support of their contentions and undertake to distinguish others which are adverse, apparently or actually. All cases differ as to the facts to which the established principles of law were or must be applied. In close application here are Kentucky Utilities Co. v. White Star Coal Co., 244 Ky. 759, 52 S.W. 2d 705; Kentucky Utilities Co. v. Young, Ky., 247 S.W.2d 978; Kentucky Power Co. v. Kilbourn, Ky., 307 S.W.2d 9.

The judgment is affirmed.