Schwegel *v.* Goldberg, Appellant.

Argued December 13, 1966.   Before ERVIN, P. J., WRIGHT, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ. (WATKINS, J., absent).

*Albert B. Gerber,* with him *Gerber, Galfand & Berger,* for appellant.

*James Francis Lawler,* with him *Ostroff & Lawler,* for appellee.

OPINION BY JACOBS, J., March 23, 1967:

The minor plaintiff, William Schwegel, was a pedestrian who was struck on Lippincott Street, in the City of Philadelphia, by an automobile driven by the defendant, Morton L. Goldberg.  The father of the minor plaintiff brought suit on his own cause of action and that of his minor son, who, at the time of the acci-

dent, was four years and four months old. The defendant's motion for a compulsory nonsuit at the end of the plaintiff's testimony was refused. The defendant did not testify on his own behalf nor did he present any witnesses and the jury awarded the minor plaintiff $7,500 and his father $236. Defendant's motions for judgment n.o.v. and for a new trial were denied and judgments were entered on the verdicts. The defendant now appeals to us. We affirm.

## I. Judgment N.O.V.

In support of his request for judgment n.o.v. the appellant alleges that there was no evidence of negligence which warranted submitting the case to the jury. In considering this request we must keep several principles in mind. The evidence, together with all reasonable inferences therefrom, must be considered in the light most favorable to the verdict winner. *Skoda v. West Penn Power Company,* 411 Pa. 323, 191 A. 2d 822 (1963). In other words "we must accept the whole body of evidence in the strongest way it reasonably can be interpreted in support of the verdict and reject any evidence to the contrary." *Geiger v. Schneyer,* 398 Pa. 69, 71, 157 A. 2d 56 (1959). No question of contributory negligence arises because a minor under the age of seven years is conclusively presumed to be incapable of negligence. *Kuhns v. Brugger,* 390 Pa. 331 at 340, 135 A. 2d 395 (1957).

Viewed in this manner the evidence showed that the accident occurred at approximately noon on May 9, 1963 in front of No. 229 West Lippincott Street. Lippincott Street runs in an east to west direction and is a one way street which permits traffic to go west. The appellant's automobile was heading west in the middle of Lippincott Street. The minor plaintiff and four other children of tender age were playing on the pave-

ment in front of No. 229 which is the fifth house east of American Street an intersecting street which dead ends Lippincott Street. Lippincott Street is 34 feet wide from curb to curb. Although there were cars parked on the north side of Lippincott Street no car was parked in front of No. 229 where the minor plaintiff and the other children were playing with a ball. The minor plaintiff failed to catch the ball at one point, went into the street after it, and was struck by the left front bumper of the appellant's automobile. The minor plaintiff went into the street from the north side, i.e., the appellant's right side.

The decisive question here is "whether or not the minor plaintiff was in the roadway for a sufficient period of time before the accident that the defendant (appellant) in the exercise of due care should have seen him and avoided the accident." *Zernell v. Miley,* 417 Pa. 17, 21, 208 A. 2d 264 (1965). In this case the child was struck by the left front bumper of the appellant's car and since the street was shown to be 34 feet wide on plaintiff's exhibit No. 2, and the appellant was shown to be driving in the center of the street, it is a reasonable inference that the child had come out from the curb more than 17 feet before he was struck by the appellant's automobile. No one disputes that the minor plaintiff came onto the street from the open space in front of No. 229. If he came out after the ball at the extreme west end of that open space of at least one car's length, the jury would be justified in finding that he was on the travelled portion of the road long enough for the appellant to have seen him and avoided him. The same might well be true if he came out of the middle of the unoccupied space. The presence of a ball preceding the child could have alerted the appellant to the approach of a child. Such analysis of the testimony, in our opinion, properly flows from accepting the whole body of evidence in

the strongest way it reasonably can be interpreted in support of the verdict. "But, in any event, since all doubts must be resolved in plaintiff's favor, we think it was the jury's function to determine whether the plaintiff was observable a sufficient length of time for the defendant to have avoided hitting him had he been duly attentive." *Auel v. White,* 389 Pa. 208, 213, 132 A. 2d 350 (1957).

In support of his argument the appellant cites *Calloway v. Greenawalt,* 418 Pa. 349, 211 A. 2d 435 (1965), in which the Supreme Court affirmed the grant of a compulsory nonsuit on the ground that there was no evidence of negligence. However, that case is quite different on two very essential facts. There the minor plaintiff stepped off the sidewalk, walked between two parked cars, and was struck by the defendant's automobile at the right front fender by the headlight. As Chief Justice BELL said in the opinion at page 352, "Contrary to plaintiffs' contentions, this is not the same situation as where a child is struck in the middle of the street, or where he can and should be seen if the driver had looked, and the automobile could and should have been stopped in time to avoid the accident." *Graham v. Sieger,* 196 Pa. Superior Ct. 622, 176 A. 2d 457 (1961), also cited by the appellant in support of his position is not controlling. In that case the child was struck by the right front of the defendant's automobile and thrust forward while in the case at bar he was struck by the left front of the defendant's automobile apparently at the very end of eight to ten foot skid marks. Further, in the *Graham* and *Calloway* cases the courts were sustaining grants of nonsuits while in this case a nonsuit was refused by the court below.

Although failure of the appellant to testify at the trial cannot supply negligence on his part because it must be shown affirmatively by the plaintiff, it does

raise an inference of fact that the appellant's testimony would have been adverse to him. *Peters v. Shear,* 351 Pa. 521, 41 A. 2d 556 (1945). Thus, on the factual question of whether the child darted into the automobile or ran in front of it for sufficient time that the driver should have seen him and stopped, the jury was entitled to assume that appellant's testimony would not support a darting out. In other words, it may be inferred that the plaintiffs and their witnesses truthfully described the happening of the accident. *Dommes v. Zuroski,* 350 Pa. 206, 38 A. 2d 73 (1944). From such description, as we have pointed out above, the elements of negligence could reasonably be inferred.[1]

Our examination of the record convinces us that it was reasonable for the jury to find that the preponderance of the evidence which in this case was mostly circumstantial favors a finding of liability on the part of appellant. That decision was for the jury, and neither the trial judge nor this court may assume it. *Smith v. Bell Telephone Company of Pennsylvania,* 397 Pa. 134, 153 A. 2d 477 (1959). "The focal point of judicial review is the reasonableness of the particular inference or conclusion drawn by the jury. . . . Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *Sentilles v. Inter-Caribbean Shipping Corp.,* 361 U.S. 107, 110 (1959), quoted in *Geiger v. Schneyer,* supra, at page 76.

---

[1] See *Fedorovich v. Glenn,* 337 Pa. 60, 9 A. 2d 358 (1939) and *Juchniewicz v. Hawthorne,* 158 Pa. Superior Ct. 146, 44 A. 2d 301 (1945), where the courts said that running down a child on an unobstructed highway in broad daylight is evidence of negligence unless he suddenly darted in front of the moving car.

## II.  New Trial

The appellant argues that certain testimony of a qualified neurosurgeon, an expert witness for the plaintiffs, as to the future complications of the child plaintiff's injuries was speculative and should not have been admitted into evidence.  We cannot agree.

This minor plaintiff suffered a four inch linear fracture of the skull (left occipital bone), a contusion or bruising of the brain, and a traumatic subarachnoid hemorrhage.  The surgeon testified in the second part of a response to a question by plaintiffs' attorney, "there are statistics that are reasonably well available from large numbers of similar accidents followed over a long period of time, and I would say that this child, who had suffered a fracture of the skull with a bruising of the brain, or contusion of the brain, has one chance in twenty of developing seizures at some time in the future up to 15, 20 years from now."[2]  The appellant objected to the original question which asked for possible future complications, from which the above answer flowed, and although he didn't renew his objection, the judge's action in admitting the testimony was a ruling adverse to the appellant.  Such ruling obviated the need for taking an exception under Pa. R. C. P. 227(a).

Appellant relies on *Lorch v. Eglin,* 369 Pa. 314, 85 A. 2d 841 (1952), to support his contention.  His reliance is misplaced.  In that case the plaintiff had suffered a head injury and had occasional leakage of cerebrospinal fluid through the nose.  The plaintiff's doctor testified, *"if* (this fluid) does become infected we get a condition known as meningitis."  He also testified that this condition could result in recovery or

---

[2] The physician explained that the "stimulus for the attack" is in the "contraction" of the scar that formed in the repair of the contusion of the brain, which contraction "proceeds with time."

death; that "because of the continued cerebrospinal leak he is sitting on a keg of dynamite. Any time he is *liable* to get meningitis. *If* he gets meningitis and he recovers, he is all right; *if* he doesn't, something may happen to him." This alarming testimony was such that the jury could only speculate or conjecture as to the possibility of the happening of another event, viz., the fluid becoming infected, which event would cause meningitis. There was no testimony as to the likelihood or probability of (1) the fluid becoming infected or (2) of the patient dying rather than recovering should he get meningitis.

The factual situation of the case at bar is closer to that presented in *Boyle v. Pennsylvania Railroad Company*, 403 Pa. 614, 170 A. 2d 865 (1961), where the plaintiff suffered a neck and head tilt, which the doctor testified was permanent. The Supreme Court there said, at page 618, "The condition is abnormal and there is no harm in allowing the doctor to explain the possible future effects of the disability." Likewise in this case, a scar on the brain, an abnormal condition, resulted from the accident. There was no speculation or guessing as to that medical fact. Nor was the neurosurgeon speculating or guessing when, based on statistics in his field of expertise, he indicated the probabilities of this particular plaintiff suffering from epileptic seizures as a result of a condition caused by this accident. There is nothing evidentially improper about this testimony. If we were to rule it out we would be holding that such possible future effects are not entitled to any consideration as a matter of substantive law. See II Wigmore, Evidence §663(1), (3d Ed. 1940). That would be unfair since the action must be brought within the time limitations fixed by our law and all damages, past, present and future, must be determined in that one action. Admittedly the probability of this child's getting epileptic seizures is low

and it should be weighed by the jury accordingly. However, rather than keep this medical knowledge from the jury we are of the opinion that the defendant's remedy lies in objecting to the excessiveness of the verdict in a proper case. In view of the injuries, the testimony regarding subsequent headaches and nervousness, including bed wetting, and the five per cent probability of future epilepsy we find nothing excessive in a $7,500 verdict, which, in our opinion, reflects the jury's consideration of the relatively low probability of future seizures.

Judgments affirmed.

SPAULDING, J., would grant a new trial.