**Louise M. WILSON, Appellant,**

v.

**REDKEN LABORATORIES, INC., Appellee.**

Supreme Court of Kentucky.

Feb. 21, 1978.

Rehearing Denied April 11, 1978.

---

6. *Shawhan v. Commonwealth,* Ky., 318 S.W.2d 541 (1958).

William E. Johnson, Johnson, Judy & Gaines, Frankfort, Charles E. Carter, Owenton, for appellant.

E. Andre Busald, Busald, Funk & Zeverly, Florence, for appellee.

JONES, Justice.

This appeal arises from an action brought by Louise M. Wilson against Redken Laboratories to recover damages caused to her hair when Nancy Scobee, Redken's representative, used its products on Louise's hair. The jury found for Louise and awarded her $45.00 for medical expenses, $200.00 for the cost of wigs, and $30,000.00 for her past, present and future mental anguish.

Redken appealed to the Court of Appeals of Kentucky. The Court of Appeals affirmed that part of the judgment which found that the negligence of Nancy Scobee could be imputed to Redken. However, it reversed on the question of damages on the ground that the verdict of $30,000.00 for mental anguish struck the mind at "first blush," as having been given under the influence of passion and prejudice. Louise filed a motion for discretionary review on the sole question of whether the jury verdict was excessive, and upon that basis this court granted review.

The relevant facts of the case are as follows. On November 7, 1973, Louise Wilson went to her beautician, Della Johnson, to have her hair frosted. Louise usually went to Della's beauty salon once a week. Some several months before that November day, Marvin Stewart, another beautician, had frosted Louise's hair. However, on this particular occasion after Della had frosted Louise's hair, some unexplained orange spots were observed. It is apparent that Marvin Stewart had more expertise as a beautician than did Della, as she called Marvin, who came to her shop and inspected Louise's hair. Marvin suggested that Louise contact Redken Laboratories, Inc., because its representatives had told them that if they ever encountered any problems with Redken's products, they should contact

Redken. Della contacted Redken and informed it that she wanted to have a color technician assist her with Louise's hair. Nancy Scobee, who identified herself as a color technician from Redken, contacted Della. Nancy made an appointment with Louise to come to Della's shop on December 10, 1973. The purpose, according to Louise, was to get help in solving her hair coloring problem. Between the dates of November 7, 1973 and December 10, 1973, Della applied a Redken product called "Redken P.P.T. Conditioner" to Louise's hair for the purpose of strengthening and conditioning it. Redken gave no warning that this process could be harmful to the hair if it was used more than once in any given period. Della applied this conditioner to Louise's hair four times between November 7, 1973 and December 10, 1973. There was no abnormal amount of breakage between that period. On December 10, 1973, when Nancy Scobee arrived at Della's beauty salon, she examined Louise's hair and indicated that she could solve the problem. Nancy did not conduct a strand test on Louise's hair to determine its strength. It is apparent from the record that the purpose of the strand test was to determine the strength and color of the hair. Nancy used a Redken product known as "Cool Blue Bleach." She applied the product to Louise's hair and left it for 45 minutes. Nancy used a dye solvent to shampoo and condition Louise's hair. She then placed plastic cups on Louise's head and put bleach in the cups. On the hair left outside the cups she placed a dye. Redken's products were used in that process. After Nancy had completed the frosting on Louise's hair, Della started combing the hair which immediately began breaking off and continued to break off near the scalp for several days until nearly all of it had fallen out. Louise looked like a man with a burr haircut. Dr. Cooper who testified he saw Louise more than a year after the application of the Redken products by Nancy Scobee, said that 80% of her hair was brittle and breaking or had broken off. Louise had to purchase wigs to cover the ugliness. The damage to her hair made her nervous and upset. When she was

asked about it, Louise would cry. She was so distressed about her appearance that she slept in a wig. At the time of the trial, which was some 29 months after Nancy had applied the Redken products, Louise was still sleeping in a wig. Dr. Cooper also testified that he could not state whether she would ever get over the result of the traumatic experience. Dr. Cooper testified that the condition of Louise's hair had made extremely slow improvement, much slower than one would expect over such a long period. At the time of the trial, May 13, 1976, Louise was still wearing a wig. She removed the wig so the jury could see the condition of her hair. It would still not hold a curl. Louise testified her hair was dry and thinner. She testified also that the reason she wore a wig at night was because she didn't want her family to see her hair in its damaged condition.

■ This court now directs its attention to the question of whether there was sufficient evidence to justify the jury's verdict. For many years this and other courts have used the term "first blush" as meaning at first sight; or without further consideration. However, this court is of the view the phrase "first blush" as applied to the facts of this case is a misnomer. It is not the function of this or any appellate court to blush at any time when it considers the question of damages awarded by a jury to an injured person.

Webster's New World Dictionary defines blush as "to become red in the face from shame, embarrassment or confusion." Under the evidence in this case if any person had a right to a "first blush" in the real sense of the plain and ordinary meaning of the phrase, that person was Louise Wilson who lost her hair.

The uncontradicted evidence plainly demonstrates that Louise Wilson had a traumatic experience, and suffered humiliation and distress, which are phases of mental anguish.

The Court of Appeals cited the case of *L & N Railroad Co. v. Mattingly*, Ky., 339 S.W.2d 155 (1960) to indicate its guidelines

for determining the question of excessive damages. In that case one of the issues was whether a verdict of $62,331 should strike the mind at "first blush" as having been given under the influence of passion or prejudice. This court held that under the facts of that case it did not so strike this court. In fact, the court stated:

"A verdict may be set aside as excessive only if 'it is [so] to such an extent as to cause the mind at first blush to conclude that it was returned under the influence of passion or prejudice on the part of the jury.' *Cumberland R. Co. v. Girdner*, 1919, 184 Ky. 375, 212 S.W. 105, 108. On the whole, taking the evidence as to pain and suffering and loss of earning power and projecting it over the period of 30 years from the time of the accident, the award of $61,500 for those items may have been liberal, but we cannot say that it shocks the conscience or is clearly excessive."

■ In its opinion the Court of Appeals placed emphasis on the fact that in this case there was no evidence of loss of wages, pain or earning capacity. It is obvious the Court of Appeals determined that in order to recover damages at the hands of the jury there should have been physical pain and suffering. That is a false premise. More than three score years ago this court held that it was proper for the jury to authorize a recovery for mortification and humiliation. The court also held that the word "distress" is a generic term and includes anguish and suffering both of mind and body, and that humiliation and mortification are simply phases of mental anguish. See *Perkins v. Ogilvie*, 148 Ky. 309, 146 S.W. 735 (1912).

The trial court in its interrogatory # 5(c) instructed the jury as follows:

"What sum of money do you find will fairly and adequately compensate Louise Wilson for the following items of damage she sustained, if any, as a direct result of her hair treatment?

\*   \*   \*   \*   \*   \*

"(c) For such damages as will reasonably compensate her for *past, present, and future mental anguish and suffering*, not to exceed the sum of $50,000.00." (Emphasis added).

The trial court told the jury nothing about any pain attendant to the hair treatment.

■ This court is of the opinion that the Court of Appeals overlooked the fact that the appearance of a person as seen through the eyes of that person is one of the most important things in life. It is the goal of all well-adjusted persons to constantly strive to project the best appearance possible. One of the greatest pains that any person can suffer is the pain of embarrassment. The sudden loss of Louise's hair was a traumatic shock. As do most women, Louise had always taken pride in her hair. Wearing a wig made her feel like a phony. She was so ashamed of her appearance that she wouldn't let anyone, even her family, see her without a wig until well over a year from the happening of the event that caused the loss of her hair. It is this court's opinion that the "first blush" rule used by the courts as it relates to excessive damages simply means that the judicial mind immediately is shocked and surprised at the great disproportion of the size of the verdict to that which evidence in the case would authorize. This court has stated:

"The rule is that a verdict will not be set aside as excessive, unless it is so grossly disproportionate as to the measure of damages, or is palpably against the evidence, as to shock the conscience and raise an irresistible inference that it was influenced by passion or prejudice." See *Cole & Crane v. May*, 185 Ky. 135, 214 S.W. 885 (1919); *Elmore v. Speicher*, 481 S.W.2d 673 (1972).

The Apostle Paul in his first letter to the Corinthians, spoke upon the subject of a woman's hair in this manner:

"But if a woman have long hair it is a glory to her for her hair is given to her for a covering." [1]

---

1. I Corinthians 11:15.

Louise Wilson does not have long hair. In effect she is like a lamb shorn. She has no covering, nor is there evidence that she ever will have.

More than 2½ years after the hair preparation that damaged Louise's hair, the jury saw her in person without the wig. It heard all of the evidence and was properly instructed. Louise Wilson has suffered a grievous and severe injury. The evidence indicates that it will still be a source of embarrassment and humiliation.

■ In light of the evidence presented to the jury this court is unable to say that the judicial mind would have its conscience shocked at the size of the verdict under consideration when viewed in light of the testimony. This court is of the further view that it is not authorized to set aside the verdict on the ground of it being excessive although the award was liberal.

The judgment of the Court of Appeals is reversed with directions for entry of a judgment affirming the trial court.

PALMORE, C. J., and CLAYTON, JONES, LUKOWSKY, STEPHENSON and STERNBERG, JJ., concur.

REED, J., dissents.