Sandra L. DAVIS (now Litten),
Appellant,

v.

George GRAVISS, Appellee.

Supreme Court of Kentucky.

May 31, 1984.

J. Leonard Rosenberg, Cecil Davenport, Hanish, Davenport, Rosenberg & Weiner, Louisville, for appellant.

William S. Bowman, Leslie M. Murray, Stiles & Bowman, Louisville, for appellee.

LEIBSON, Justice.

The issue is whether the Court of Appeals erred in setting aside the verdict in this case as excessive. From our review of the record we conclude that the evidence was sufficient to support the jury's verdict and that the Court of Appeals' standard for review was inappropriate. We reverse the Court of Appeals and affirm the verdict and judgment of the trial court.

■ It is difficult to summarize the evidence because there are two versions, both documented by the record depending upon how one views it. One view was expressed in the appellant's brief and accepted by the jury and the trial court. A second view was expressed in the appellee's brief and accepted by the Court of Appeals. As an appellate court reviewing the evidence to decide whether the verdict should be set aside as excessive, "our task is ... only to determine what are the most favorable conclusions the jury was authorized to draw."

*L & N Railroad Co. v. Mattingly*, Ky., 339 S.W.2d 155, 160 (1960). *Beatrice Foods Co. v. Chatham*, Ky., 371 S.W.2d 17 (1963) states the rule thusly:

> "(T)his court will not invade the jury's province to weigh conflicting evidence, judge the credibility of witnesses and draw the ultimate conclusion." 317 S.W.2d at 19.

Appellant's claim arises out of a motor vehicle collision on December 1, 1978, in Jefferson County. It was an intersection collision between the car she was driving and appellee who approached from the opposite direction and made a left turn in front of her. She was taken injured from the scene and hospitalized for four (4) days. She was treated for a broken nose, dislodged teeth, contusions of the mouth, dizziness, disorientation and concussion. Subsequently following episodes of drainage of a clear, watery fluid from her nose, she was diagnosed as suffering from a basilar skull fracture or other injury causing leakage of cerebral spinal fluid through the cribriform plate.

A number of different doctors testified in the case, including two neurosurgeons, an ear, nose and throat specialist, a clinical psychologist, and a vocational expert. Their testimony establishes with reasonable probability[1] that as a result of the accident plaintiff has a permanent defect in the base of her skull which will result in episodes of cerebral spinal fluid leakage of indeterminate frequency. This condition creates a potential for future complications from infection including meningitis, brain abscess or other neurological problems. In short, the injury is potentially devastating. One neurosurgeon has advised the appellant to undertake surgery as a preventive measure and one has advised such surgery is too difficult and dangerous, involving risks of death, blindness, paralysis, speech disturbances or seizures.

Appellee argues that the appellant is not entitled to compensation for the danger of

---

1. "(A) qualified opinion based on reasonable probability satisfies the requirement ..." *Rog-* *ers v. Sullivan*, Ky., 410 S.W.2d 624, 628 (1967).

future complications, no matter how fearful the prospect, unless it can be shown that such complications will probably occur. While conceding the proof establishes the likelihood of future episodes of leakage of cerebral spinal fluid, appellee argues that proof of catastrophic complications is speculative. On the other side, appellant contends that the evidence is sufficient to establish the likelihood of such consequences, and further, that regardless of whether future devastating complications are a probability or a possibility, the increased likelihood of such complications is a certainty and is compensable in and of itself.

The Court of Appeals agreed with the appellee's position. It decided to set aside the award because "Litten's experts could only say she *probably* had spinal fluid leakage and she *possibly* could suffer further complications." (Emphasis original) Court of Appeals, Slip Opinion, p. 6.

A duly qualified doctor of psychology, after appropriate testing, testified that as a direct result of the injury appellant suffers significant emotional and psychological damage. Realistically, she fears both the dangers of surgery and the likelihood of future serious illness should she not undertake surgery. Further, she so fears serious consequences from a reinjury to her nose that it frustrates her ability to conduct normal activities.

A duly qualified vocational guidance expert examined and tested the appellant as to future employability and impairment of earning capacity and concluded that she had experienced an "occupational loss" of approximately forty (40) percent.

The jury returned a verdict of $390,000. The trial court overruled the motion for new trial, which included appellee's claim that the award should be set aside as excessive, and entered judgment on the verdict.[2] Approximately $224,500 of the award was for mental and physical suffering, past and future, and $157,500 was for permanent impairment of earning power. The evidence underpinning most of this substantial award of general damages is

the evidence of a permanent injury in the base of the skull causing episodes of cerebral spinal leakage, the potential for catastrophic complications, and the mental suffering and impairment of normal living that attends her condition.

Thus the threshold question is the appellant's right to compensation for an injury causing an increased risk of future harm and for mental suffering and impairment of earning power resulting from the *fear* caused by the increased risk of future harm. The psychologist testified that "her fears are reasonably understandable and are real," and that "she will continually get worse, and there will be more anxiety and depression." The vocational guidance specialist testified as to "occupational impairment" as a direct result of her fear, anxiety and depression. The question is whether damages of this nature are compensable as appellant contends or speculative as appellee contends.

In *Wilson v. Redken Laboratories, Inc.,* Ky., 562 S.W.2d 633 (1978), we reversed an opinion by the Court of Appeals setting aside a jury verdict of $30,000 for permanent damage to the plaintiff's hair, a condition causing no physical pain and cosmetic in nature, stating:

"The uncontradicted evidence plainly demonstrates that Louise Wilson had a traumatic experience, and suffered humiliation and distress, which are phases of mental anguish." 562 S.W.2d at 635.

In *Murray v. Lawson*, Ky., 441 S.W.2d 136 (1969), we affirmed the relevancy of evidence as proof of damages that the plaintiff had suffered a disabling "phobic reaction" to an injury from which she was otherwise fully recovered. Her doctor testified that he treated her for "anxiety neurosis" and a psychiatrist "testified that such *phobic reaction* is medically recognized and accepted as a psychiatric condition." (Emphasis added). 441 S.W.2d at 137.

**2.** Amended to $385,799.25 by post-judgment modification to adjust for no-fault benefits.

In *Deutsch v. Shein,* Ky., 597 S.W.2d 141 (1980), we recognized plaintiff's right to damages for mental suffering following a therapeutic abortion which she underwent voluntarily out of fear of future consequences to her unborn child. The negligence of the defendant physician was in causing the plaintiff to be x-rayed without first checking her for pregnancy, which in turn caused her to seek a therapeutic abortion. We stated:

> "We find no difficulty in concluding that the physical contact necessary to support the claim for mental suffering occurred when, through Dr. Shein's negligence, Mrs. Deutsch's person was bombarded by x-rays." 597 S.W.2d at 146.

Thus, we have previously recognized the right to substantial damages for mental suffering not directly related to physical pain where the injury was cosmetic (*Wilson, supra*), where the injury was a phobic reaction or function of the mind (*Murray, supra*), and where there was an abortion from fear of future consequences but physical injury was either debatable or nonexistent (*Deutsch, supra*). In the present case the appellant's mental suffering translates into fear, anxiety and depression both substantial and incapacitating that falls well within the parameters of these cases.

Plaintiff's testimony depicted a woman caught up in the dilemma of two conflicting and terrifying courses of action. One doctor says her condition is so serious that she needs a dangerous operation. Another says the operative risks are worse than the risk of future complications. The appellant is left to twist in the wind every day of her life as to whether she ought to have the operation or whether she ought to run the risk that if she gets a common cold it may get into her spinal fluid and lead to meningitis or worse. Appellant's fear of complications is both understandable and reasonable. It is a direct result of her injury. The question is whether the jury's award for that kind of mental stress and disturbance should be considered as excessive.

There is another aspect to the question before us. Where the evidence establishes a condition causing an increased likelihood of contracting a devastating illness, or an increased risk of future harm, and such likelihood or risk is substantial but the occurrence itself is not necessarily probable, is this a compensable injury? Otherwise stated, is enhanced or created susceptibility a separate ground for an award?

In *Martin v. City of New Orleans,* 678 F.2d 1321 (5th Cir., 1982), plaintiff's injury was a bullet lodged in the base of his neck, a fraction of an inch from his spinal cord. The doctors testified his "prognosis was good ... (but) there would always be some risk of future complications, and that the consequences could be life-threatening.... (S)urgery was considered too dangerous." The United States Court of Appeals said:

> "In light of this emotional burden and the serious physical risks he will always have, we cannot say that $500,000 is 'contrary to right reason,' (citation omitted), or in excess of the amount that '*any* reasonable man could feel (Martin) was entitled to.'"

In *Feist v. Sears, Roebuck & Co.,* 267 Or. 402, 517 P.2d 675 (1973), the court sustained an award based on evidence that plaintiff's skull fracture was of such a nature as to "increase her susceptibility to meningitis," even though future meningitis was not probable but a mere possibility. The fact situation in these two cases is strikingly similar to the present case.

A number of cases have upheld substantial awards for skull fractures on the basis of the increased risk of future epilepsy, even though such risk was substantially less than a probability. E.g., *Schwegel v. Goldberg,* 209 Pa.Super. 280, 228 A.2d 405 (1967); *McCall v. United States,* 206 F.Supp. 421 (E.D.Va., 1962).

Somewhat closer to home, in a case from Kentucky appealed to the United States Sixth Circuit, *Traylor v. United States,* 418 F.2d 262 (6th Cir., 1969), the Federal court sustained an award for the increased likelihood of a future hernia developing from an injury that left internal scarring but only a possibility of future complications.

There are similar Kentucky decisions, although none quite so close in fact situation. In *Oppenheimer v. Smith*, Ky., 512 S.W.2d 510 (1974), a plaintiff received compression fractures of two vertebrae which healed with no disability, but we sustained an award of $100,000 based in large measure on medical testimony that the vertebrae would experience early degenerative changes creating the potential for future traumatic arthritis.

*Richard v. Adair Hospital Foundation Corp.*, Ky.App., 566 S.W.2d 791 (1978), held that the plaintiff stated a cause of action against the defendant hospital for refusing to admit a baby suffering from pneumonia who died hours later after being admitted at a second hospital, based on the following:

> "(M)edical testimony was to the effect that the child's *chance of recovery* would have been substantially better had treatment been rendered when the child was presented to the Adair County Hospital." (Emphasis added). 566 S.W.2d at 793.

While recognizing that it "must be shown by medical testimony that causation is probable and not merely possible," the court concludes:

> "Given the medical testimony in this case, ... it could safely be said that this child's chances of recovery would have been substantially greater and better had she been treated earlier ..." 566 S.W.2d at 794.

Thus, where there is substantial evidence of probative value to support it, the jury may consider and compensate for the increased likelihood of future complications. Where, as here, that likelihood initiates serious mental distress, this also is compensable.

In considering whether the verdict should be set aside as excessive, the trial court and appellate court have different functions. When presented with a motion for new trial on grounds of excessive damages, the trial court is charged with the responsibility of deciding whether the jury's award appears "to have been given under the influence of passion or prejudice or in disregard of the evidence or the instructions of the court." CR 59.01(d). This is a discretionary function assigned to the trial judge who has heard the witnesses firsthand and viewed their demeanor and who has observed the jury throughout the trial.

In this case the Court of Appeals exercised the trial court's prerogative. The Court of Appeals decided "the verdict herein (comes) within the 'first blush rule.'" But in *Wilson v. Redken Laboratories, Inc.*, *supra*, at 635, we state that "It is not the function of *this or any appellate* court to blush at any time when it considers the question of damages awarded by a jury to an injured person." (Emphasis added).

The "first blush" rule is a mechanism to assist the *trial court* in performing its responsibility when called upon to decide whether the award is so excessive as to appear "to have been given under the influence of passion or prejudice." CR 59.-01(d). In its entirety it is that "a verdict may be set aside as excessive only if 'it is (so) to such an extent as to cause the mind at first blush to conclude that it was returned under the influence of passion or prejudice on the part of the jury.'" *Wilson v. Redken Laboratories, Inc.*, *supra*, 562 S.W.2d at 636.

On the other hand, the appellate function is properly described in *Prater v. Arnett*, Ky.App., 648 S.W.2d 82 (1983):

> "Upon reviewing the action of a trial judge in (granting or denying a new trial for excessiveness), the appellate court no longer steps into the shoes of the trial court to inspect the actions of the jury from his perspective. Now, the appellate court reviews only the actions of the trial judge ... to determine if his actions constituted an error of law. There is no error of law unless the trial judge is said to have abused his discretion and thereby rendered his decision clearly erroneous. Further, the action of the trial judge is presumptively correct ..." 648 S.W.2d at 86.

Our earlier opinion discussing review of the question of excessive damages in *City of Louisville v. Allen*, Ky., 385 S.W.2d 179 (1964) expresses essentially the same analysis as *Prater v. Arnett* of the different functions of trial and appellate courts. The basic guideline for appellate review is set out in the *Allen* case as follows:

> "It serves to emphasize the initial and primary role of the trial judge in determining these issues; that his decision shall be *prima facie correct* and final; and that only in rare instance when it can be said that he *has clearly erred*, i.e., abused his discretion, will he be reversed." (Emphasis original.) 385 S.W.2d at 183–184.

 Once the issue is squarely presented to the trial judge, who heard and considered the evidence, neither we, nor will the Court of Appeals substitute our judgment on excessiveness for his unless clearly erroneous.

 In short, the rules governing appellate practice do not direct the appellate judge to decide if the verdict shocks his conscience or causes him to blush. Those rules charge us with the responsibility to review the record and decide whether, when viewed from a standpoint "most favorable" to the prevailing party, there is evidence to support the verdict and judgment. *Rogers v. Kasdan*, Ky., 612 S.W.2d 133 (1981). There is sufficient evidence to support the jury's award in this case. Neither the Court of Appeals nor this Court is justified in setting it aside in such circumstances.

The decision of the Court of Appeals is reversed. The judgment of the trial court is affirmed.

STEPHENS, C.J., and AKER, GANT, LEIBSON and WINTERSHEIMER, JJ., concur.

VANCE, J., dissents and files a separate opinion in which STEPHENSON, J., joins.

VANCE, Justice, dissenting.

I am troubled not so much with the holding of the majority as with the opinion. The holding reverses the Court of Appeals and sustains a jury award to movant which had been set aside by the Court of Appeals as excessive. The majority opinion concludes, correctly, I believe, that movant sustained a permanent injury. The injury increased the chances of drastic future complications, including the possibility of spinal meningitis. The drastic consequences which may befall movant are only possibilities and, according to the medical testimony, not very great possibilities, certainly nothing even approaching a probability. Nevertheless, she has developed a phobic reaction about these possibilities, and for the remainder of her lifetime, it is probable that she will be tormented by the fear of these consequences. This a form of mental anguish which has resulted from her injury, and the jury was certainly entitled to award her compensation for the mental anguish which was established as a reasonable probability, if not a certainty. I agree that a reviewing court could not properly say the sum awarded was so excessive that no reasonable person could have awarded such a sum on the evidence heard and that it therefore must have resulted from bias or prejudice.

The opinion, however, does not stop there. It goes on to discuss at great length the right to recover damages for possible, not probable, physical injuries and seems to conclude that, in Kentucky, a recovery may be had for complications which may result from an injury when the medical evidence shows only the possibility that the complications may arise. This, I believe, is a departure from well-settled law in Kentucky which is both unwarranted and unnecessary to the decision of this case.

On page 930 of the slip opinion we find the statement:

> "Thus the threshold question is the appellant's right to compensation for an injury causing an increased risk of future harm and for mental suffering . . .

from the *fear* caused by the increased risk...."

The majority opinion then proceeds to discuss three Kentucky cases which recognize mental anguish as a damage factor, concludes that movant has suffered such anguish, and states that the question is whether the award for mental suffering is excessive.

Before answering that question, the majority states there is another aspect to the question and that is whether a condition which causes a substantial, but less than probable, increase of future harm is compensable.

Cases from other jurisdictions are cited in which awards were upheld which were based upon consideration of increased susceptibility to future harm even though such future harm was not probable, but only a mere possibility.

Also cited are two Kentucky cases, *Oppenheimer v. Smith*, Ky., 512 S.W.2d 510 (1974), and *Richard v. Adair Hospital Foundation Corp.*, Ky.App., 566 S.W.2d 791 (1978). *Oppenheimer* is not authority for the proposition cited because the medical testimony was that future arthritic changes were "likely" which equates with probable, and *Richard v. Adair Hospital Foundation Corp., supra,* is not in point because the issue was whether summary judgment was proper in a negligence case. The hospital simply failed to meet its burden to establish that no issue of fact existed as to its freedom from negligence. The case did not hold that recovery could be had on the proof of possibility of harm.

The majority concludes:

"Thus, where there is substantial evidence of probative value to support it, the jury may consider and compensate for the increased likelihood of future complications. Where, as here, that likelihood initiates serious mental distress, this also is compensable."

The majority holds that a jury may award compensation for a possible complication which may develop from an injury although the complication is not probable.

In addition to recovering for the possibility of this future complication, the majority states that you may also recover for any mental anxiety caused by the possibility.

In my view the award in this case can be upheld on the ground that an appellate court cannot say the compensation awarded for the proven mental anguish was so excessive as to be unreasonable. That is as far as we need go. It is not necessary or proper in the decision of this case to extend the law of Kentucky to allow recovery for the possibility that movant may contract spinal meningitis as a result of her injury. She had already recovered for that possibility in the award made to compensate her for mental anguish. The mental anguish is real, but meningitis is only a speculation.

STEPHENSON, J., concurs in this dissent.