# Weaver v. Zusman

*April L. Strang-Kutay,* for plaintiffs.
*Alan R. Krier* and *Anthony J. Zanoni,* for defendants.

GRINE, *J.,* January 4, 2006—Presently before the court is defendants', Ehud I. Zusman M.D. and State College Urologic Associates, motion in limine. In their motion, defendants seek to limit the expert medical testimony of Dr. Canning for the limited purpose of indicating his own opinion regarding the particular issue he addressed in the reports. Defendants further seek to preclude the testimony of plaintiffs' psychological expert in whole. A hearing was held in the matter on November 17, 2005. Counsel for defendants filed their brief in support, and counsel for plaintiffs filed her response, both in timely manner. This court is ready to decide the issue. After reviewing the memorandum filed by counsel, this court grants defendants' motion in part, and denies defendants' motion in part. By way of further clarification, plaintiffs shall not elicit any testimony from Dr. Canning which is not fairly contained within the expert reports provided. Dr. Masey will be permitted to testify at trial.

## DISCUSSION

Plaintiffs, parents of plaintiff-child, initiated this cause of action by filing a complaint with this court on or about June 9, 2003. The complaint alleges negligence in the

care and treatment of plaintiff-child by defendants. Specifically, plaintiffs assert that defendants' medical services fell below the required standard of care, and that this deviation caused certain injuries when defendant-physician performed a medical procedure on the minor child on or about April 22, 2001, to remove skin bridges from the child's penis.

Defendants' motion in limine seeks to preclude certain testimony of two of plaintiffs' medical experts, specifically, Douglas A. Canning M.D., a pediatric urologist, and Donald P. Masey Psy.D., licensed psychologist. Dr. Canning is offered relative to the standard of care required of pediatric urologists in connection with newborn circumcision, redundant prepuce, and penile adhesions. Dr. Masey's testimony is offered regarding any possible future psychological effects of the medical procedures on the plaintiff-child.

Ordinarily, in cases involving alleged negligence, expert testimony is not required when the matter under consideration is simple and the lack of ordinary care is obvious and within the range of understanding of the average juror. However, "[o]ne of the most distinguishing features of a medical malpractice suit is, in most cases, the need for expert testimony, which may be necessary to elucidate complex medical issues to a jury of laypersons. In other words, '[b]ecause the negligence of a physician encompasses matters not within the ordinary knowledge and experience of laypersons[,] a medical malpractice plaintiff *must* present expert testimony to establish the applicable standard of care, the deviation from that standard, causation and the extent of the in-

jury.' " *Yee v. Roberts,* 878 A.2d 906, 912 (Pa. Super. 2005). (emphasis added) (citation omitted)

Defendants argue that Dr. Canning's medical report and deposition fail to link the alleged failure to remove all of the adhesions from the child's penis during the initial surgery with any potential need for a third surgical procedure to remove the remaining adhesions or to any curvature or any other deformity that may develop over time. As such, defendants specifically request Dr. Canning's testimony at trial to be limited to Dr. Zusman's alleged failure to remove all of the adhesions requiring a second surgery.

In letters dated June 9, 2005 and September 30, 2005, Dr. Canning provides: "In my opinion, had [adhesions been present on the right side of the child's penis before Dr. Zusman's surgery in April 2001], it would have been in Jordan's best interest for Dr. Zusman to have incised all of the preputial glanular adhesions at the time of the surgery. In my estimation, by failing to incise all of the glanular adhesions, Dr. Zusman failed to meet the standard of care in correcting this condition." See exhibit B, pp. 2, 4. Dr. Canning does not, however, give an opinion as to whether the potential for curving of the penis, or any other deformity that may arise, was or would be caused by the manner in which Dr. Zusman performed the initial corrective surgery.

Therefore, after a careful review of Dr. Canning's medical report and deposition, and plaintiffs' admittance that they do not intend to elicit any testimony from Dr. Canning "which is not fairly contained within the expert reports provided," this court agrees that, at trial, Dr.

Canning's testimony shall not extend beyond the scope of Dr. Zusman's failure to meet the standard of care when not removing all adhesions during the original surgery.

Plaintiffs have offered Dr. Masey's report in support of their claim of injuries and request for damages. Dr. Masey had performed a psychological evaluation on the child "in order to provide information about [the child's] psychological status, especially as it relates to his medical history." See exhibit A, p. 1. The relevance of Dr. Masey's observations pertaining to the child's current and potential psychological status presupposes that Dr. Zusman's care was negligent and the proximate cause of the physical anomalies which might require additional surgeries, which would potentially have a negative impact upon the child.

Defendants contend that Dr. Masey's opinions, provided in his report, lack any degree of certainty relative to any future psychological or emotional impact upon the child resulting from the medical procedures and his course of care. Specifically, defendants argue that Dr. Masey was unable to form an opinion regarding the child's future psychological status relative to the issues attendant to this medical malpractice action because the child was too young to properly evaluate any potential future impact. Because Dr. Masey's observations, concerns, and conclusions are "saturated with conjectures and statements of mere possibility," defendants argue that Dr. Masey should be precluded from testifying at trial.

In his first report, dated August 22, 2005, Dr. Masey did give his opinion on the child's emotional reaction to his prior urologic surgeries, indicating "increased anxi-

ety" in the child when coping with his medical problems, which may become exacerbated with the possibility of future medical procedures. See exhibit A, p. 7. Specifically, the doctor indicated, "[i]f additional surgeries are required and/or there are cosmetic or structural problems with his genitalia, it is the opinion of this examiner that there would be a considerably increased possibility for increased anxiety, depression, and impact on interpersonal relationships." *Id.* All of the opinions Dr. Masey provided in his evaluation were offered within a reasonable degree of psychological certainty. *Id.* at p. 8.

More problematic, however, Dr. Masey indicated, "[o]f some concern to this examiner is the fact that it is too early to determine if there will be any negative impact on [the child's] sense of sexuality, due to his young age . . . it is not possible to determine the impact of [the child's] problematic circumcisions in regard to his sense of sexuality until he is at least 11 to 12 years of age." Exhibit A, p. 7. It is with these statements that defendants argue that Dr. Masey does not, and cannot, state with any degree of certainty that the child is presently suffering a negative psychological impact from the corrective surgeries.

Even where it has been established that a defendant has breached some duty of care owed to a plaintiff, it is incumbent on the plaintiff to establish a causal connection between defendant's conduct and the plaintiff's injury; that is, a plaintiff must show that a defendant's conduct was a proximate cause of his/her injury. *Hamil v. Bashline,* 481 Pa. 256, 265, 392 A.2d 1280, 1284 (1978).

However, although medical experts are required to give or state their opinion with a "reasonable degree of medical certainty" regarding causation, the Pennsylvania Supreme Court has recognized the limitations on the degree of certainty relative to the medical prognosis of a plaintiff's physical condition in the future for the purpose of determining damages. See *Hamil v. Bashline,* 481 Pa. 256, 273, 392 A.2d 1280, 1289 (1978); see also, *Boyle v. Pennsylvania Railroad,* 403 Pa. 614, 170 A.2d 865 (1961); *Walsh v. Brody,* 220 Pa. Super. 293, 286 A.2d 666 (1971); *Schwegel v. Goldberg,* 209 Pa. Super. 280, 228 A.2d 405 (1967).

In light of these decisions, it is clear that in the case before this court, the reports and anticipated testimony of Dr. Masey is sufficient to create a prima facie case of causation. Although the effects of the medical procedures on the child's sense of sexuality are still unclear and, therefore, unforseeable, this court finds that Dr. Masey clearly stated with a psychological degree of certainty that the child, in fact, is presently suffering a negative psychological impact from his medical procedures. On the contrary, in his supplemental report, dated September 27, 2005, Dr. Masey provides:

"[I]t is not the opinion of this examiner that [the child's] psychological state at the time of the evaluation is best referred to as 'appropriate anxiety.' Rather, this examiner's findings indicated a more intense level of anxiety which went beyond self-consciousness upon genital examination." See exhibit A, p. 9. Therefore, Dr. Masey, plaintiffs' psychological expert, is permitted to testify at trial.

The court enters the following order.

## ORDER

And now January 4, 2006, after a review of the arguments and memorandum submitted by counsel, it is hereby ordered and decreed that defendants' motion in limine is granted in part and denied in part.

It is further ordered, at trial, plaintiffs shall not elicit any testimony from Dr. Douglas A. Canning which is not fairly contained within the expert reports provided. Specifically, Dr. Canning's testimony at trial is limited to Dr. Zusman's alleged failure to remove all of the adhesions requiring a second surgery.

It is further ordered, Dr. Donald P. Masey Psy.D. is permitted to testify at trial.